## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**EDWARD CONSTANTINESCU,**<br>**PERRY "PJ" MATLOCK,**<br>**JOHN RYBARCZYK,**<br>**GARY DEEL,**<br>**STEFAN HRVATIN,**<br>**TOM COOPERMAN,**<br>**MITCHELL HENNESSEY,**<br>**DANIEL KNIGHT.** | **No. 4:22-CR-00612-2** |

## DEFENDANT PERRY "PJ" MATLOCK'S
## JOINT[1] MOTION TO DISMISS
## SUPERSEDING INDICTMENT

---

[1] The arguments in this Motion are approved and adopted by Defendant Edward Constantinescu who joins with respect to count one and to the extent these arguments apply to his respective securities fraud counts 2, 14, 15, 18, and 20.

TABLE OF CONTENTS

INTRODUCTORY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ................................................................................. 6

ARGUMENT ................................................................................................ 8

   I.   LEGAL STANDARDS. ........................................................................ 8

      A.  Failure to State an Offense.................................................................. 8

      B.  Due Process and Vagueness Doctrine ................................................. 9

      C.  As-Applied Vagueness Challenges........................................................ 11

  II.   THE INDICTMENT FAILS TO STATE A § 1348 SECURITIES FRAUD OFFENSE AGAINST MR. MATLOCK BECAUSE MR. MATLOCK'S TWEETS DO NOT CONTAIN ANY "FALSE" STATEMENTS AS A MATTER OF LAW ........................ 11

      A.  Due Process Requires Falsity Under § 1348(2) to Meet an Objective Standard……………..11

      B.  The Government Attempts to Apply an Incorrect *Subjective* Standard to Mr. Matlock's Statements and Therefore the Counts Against Him Should Be Dismissed…………………….13

  III.  THIS PROSECUTION OF MR. MATLOCK, PREMISED ON THE GOVERNMENT'S NOVEL APPLICATION OF § 1348 AND § 1349, VIOLATES THE CONSTITUTIONAL COMMAND THAT A PERSON MUST HAVE FAIR WARNING THAT THEIR CONDUCT FALLS WITHIN THE SCOPE OF THOSE STATUTES .. 13

CONCLUSION .............................................................................................. 23

TABLE OF AUTHORITIES

*Connally v. General Constr. Co.*,
    269 U.S. 385 (1926) ..............................................................................9

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ..............................................................................1

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ..............................................................................9

*Maynard v. Cartwright*,
    486 U.S. 356 (1988) ............................................................................10

*McBoyle v. United States*,
    283 U.S. 25 (1931) ..............................................................................20

*United States v. Bass*,
    92 S. Ct. 515 (1971)............................................................................21

*United States v. Campbell*,
    64 F.3d 967 (5th Cir. 1995) ................................................................11

*United States v. Castro*,
    704 F.3d 125 (3d Cir. 2013) ............................................................9, 11

*United States v. Crow*,
    164 F.3d 229 (5th Cir. 1999) ................................................................8

*United States v. Flores*,
    404 F.3d 320 (5th Cir. 2005) ................................................................8

*United States v. Fontenot*,
    665 F.3d 640 (5th Cir. 2011) ...........................................................8, 13

*United States v. Harra*,
    985 F.3d 196 (3d Cir. 2021) .......................................................3, 9, 11

*United States v. Hendricks*,
    116 F.3d 1476, 1997 WL 304169 (5th Cir. 1997)................................5

*United States v. Lanier*,
    477 U.S. 242 (1986) ...................................................................9, 10, 20

*United States v. Matthews*,
   31 Fed. App'x. 838, 2002 WL 261421 (5th Cir. 2002) ........................................ 11, 12

*United States v. Medeles*,
   916 F.2d 195 (5th Cir. 1990) ................................................................................. 12

*United States v. Nadi*,
   996 F.2d 548 (2d Cir. 1993) ................................................................................... 10

*United States v. Ryan*,
   580 F. Supp. 3d 359 (E.D. La. 2022) ..................................................................... 11

*United States v. Schneiderman*,
   968 F.2d 1564 (2d Cir. 1992) ................................................................................. 10

*United States v. Simpson*,
   741 F.3d 539 (5th Cir. 2014) ................................................................................. 22

*Williams v. United States*,
   458 U.S. 279 (1982) ............................................................................................... 12

*Wooden v. United States*,
   142 S. Ct. 1063 (2022) (Gorsuch, J., concurring) ................................................ 10


Statutes and Rules:

15 U.S.C. § 80b-2(11) ............................................................................................... 21

18 U.S.C. § 1348 ................................................................................................*passim*

18 U.S.C. § 1349 ....................................................................................... 4, 6, 7, 22

Federal Rule of Criminal Procedure 12(b)(3) ......................................................... 1

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) ............................................... 8

Defendant Perry "PJ" Matlock ("Mr. Matlock") respectfully submits this memorandum of law in support of his motion to dismiss counts 1, 3, 4, 5, 7, 10 and 11 pursuant to Federal Rule of Criminal Procedure 12(b)(3).[2]

## INTRODUCTORY STATEMENT

This matter is a case of first impression. The government attempts to apply an unprecedented and novel construction of 18 U.S.C. § 1348 ("§ 1348"), historically used for "insider trading" cases, to Mr. Matlock, a day trader, and make him criminally liable for securities fraud violations based on statements he allegedly posted on social media and an online chat room. In doing so, the government implicitly attempts to expand, through the judicial process, the reach and scope of existing securities laws without fair warning to the public and to Mr. Matlock. This novel attempt to fit a square peg in a round hole, however, violates Mr. Matlock's Due Process rights under of the United States Constitution.

As demonstrated in this motion and in the Joint Motion filed as docket entry ECF No. 262, even taking as true that Mr. Matlock made all the statements that the government attributes to him in the Indictment, his conduct was not unlawful, and all the counts against him (1, 3, 4, 5, 7, 10 and 11) must be dismissed.

The government brings a total of seven counts against Mr. Matlock: a single count of conspiracy to commit securities fraud and six counts of securities fraud applying § 1348.[3] The government's theory is that Mr. Matlock committed securities fraud by engaging in a "scheme to

---

[2] Of note, Mr. Matlock has adopted arguments and authorities jointly with Defendants Constantinescu (*See* ECFNo. 262). This memorandum demonstrates how those arguments directly apply to Mr. Matlock and expands on an analysis of his statements that demonstrates why all counts against him should be dismissed.

[3] A main feature of the securities laws, including § 1348, has always been aimed at one concern in particular—insider trading. This is not an insider trading case. Nevertheless, the first indication of the government's novel approach is that in this case the government is using § 1348 to attempt to prove securities fraud, not insider trading.

'pump and dump'"[4] the stock of six public companies and conspired to commit other "pump and dumps" with "other individuals, known and unknown." According to the government, Mr. Matlock and others engaged in these "pump and dumps" through a three-step scheme: "(1) purchasing shares of a security in their accounts," (2) posting "false" information about these securities on Twitter and the Atlas Trading Discord chatroom, and (3) "secretly" selling or "concealing their intent to sell" those securities.

As detailed in Mr. Constantinescu's Joint Motion to Dismiss with Mr. Matlock, ECF No. 262, the government's theory fails as a matter of law and, thus, *cannot and should not* proceed to a jury for several reasons.

First, as demonstrated below, the six securities fraud counts against Mr. Matlock fail to state an offense because the government has not adequately alleged an essential element of § 1348 securities fraud: namely, that any of the statements by Mr. Matlock alleged in the Indictment were *objectively* "false."

As set out in detail below, the statements attributed to Mr. Matlock in the Indictment fall mainly into two categories: (1) speculations about the future price of a public company's non-restricted stock or (2) speculations about Mr. Matlock's intent to hold (or not sell) a security.[5] The government's theory is that these speculative statements were "false" based *solely* on Mr. Matlock's *subjective beliefs*. The government intends to ask the jury to infer falsity of the alleged

---

[4] "Pump and dump" schemes are typically characterized by the dissemination of fake "inside" information about a company. Specifically, promoters of the stock "will claim to have inside information about an imminent development that will lead to a dramatic upswing in the share's price." *Investor Protection Guide: Micro-cap Stock Fraud ("Pump and Dump"),* Legal Information Institute, Cornell U Law School,
https://www.law.cornell.edu/wex/investor_protection_guide_microcap_stock_fraud_%28%22pump_and_dump%22 %29; Dhir, Rajeev, *Pump-and-Dump: Definition, How the Scheme is Illegal, and Types*, Investopedia.com, Jan. 13, 2022, https://www.investopedia.com/terms/p/pumpanddump.asp.

[5] In a more tortured attempt, a third category that the government alleges as false for Mr. Matlock are factual assertions he made that are empirically true as matter of record (e.g., "I grabbed a few [shares]"). *See Section II. B. infra.*

statements based *solely* on Mr. Matlock's subsequent sales of the securities, which it suggests creates the inference that Mr. Matlock never believed that the share price would reach that value and never intended to hold the shares.

However, the government's theory of showing criminal falsity by looking at only subjective intent is a completely novel and unprecedented construction.  It is not supported by law and violates the Due Process clause of the Constitution.

"The falsity element stand[s] independent of a defendant's subjective intent," requiring the government to "prove beyond a reasonable doubt that the statement was *objectively* false." *United States v. Harra*, 985 F. 3d 196, 211–12 (3d Cir. 2021).  Accordingly, the government must allege falsity based on some *objective indicia of falsity*.

As the analysis *infra* demonstrates, the statements cited in the Indictment as related to Mr. Matlock cannot be deemed "objectively false," since they were merely price predictions and statements of future intent without any objective indicia alleged suggesting their falsity. In other instances, his statements are outright factual assertions proven to be true by the government's own allegations. For example, in a few instances, the government accuses Mr. Matlock of a crime for "falsely" stating he purchased a stock, when he *in fact* purchased said stock according to the government itself. Without alleging objective falsity, the indictment cannot stand as a matter of due process and the counts must be dismissed.

Relying on Mr. Matlock's sales after his speculative tweets as proof he did not actually believe what he said is fatally flawed for a few straightforward reasons: there is nothing in the securities laws that prohibited him from changing his mind, restricted him from selling after making these forward-looking statements, or required him to disclose these sales or the reasons behind him.

3

Permitting the government to ask a jury to infer "falsity" in this manner could lead to unworkable and improper restrictions on individuals on the transfer of their securities. Indeed, it would impose restrictions that do not currently exist in securities laws and would have an unprecedented, non-legislative, regulatory effect on retail trading as we know it.  A construction of § 1348 that restricts sale of securities based on the notion that the sale conflicts with prior statements speculating about the future price of the security has no basis in the securities laws and the rule of lenity counsels against expanding the scope of § 1348 to create this novel form of criminal liability.

Furthermore, the Constitution's fair warning requirement and its intolerance of vagueness in the application of criminal statutes mandates dismissal of the § 1348 (securities fraud) and § 1349 (conspiracy to commit securities fraud) counts.  The laws, regulations, and guidance that regulate the securities industry already provide a comprehensive scheme setting forth the rights, duties, and obligations governing the types of conduct alleged in the Indictment.  Yet none of those laws, regulations, or guidance prohibit any of the conduct alleged here nor recognize the government's "cutting edge" conspiracy theory.[6]  The fact is, even if one accepts the allegations in the Indictment as true, Mr. Matlock's actions were not unlawful.  What the Indictment alleges is not a crime: a non-insider, non-investment advisor who holds less than 5% of the outstanding shares of a company tweeting price predictions for shares of public companies and selling them before the share reaches that price.

---

[6] At the press conference announcing the Indictment, U.S. Attorney for the Southern District of Texas Alamdar S. Hamdani publicly pronounced: "As some use advances in technology and social media to prey upon the public, our office will be on the *cutting edge* of prosecuting this area of fraud." *Eight Men Indicted for $114 Million Securities Fraud Scheme Orchestrated Through Social Media*, U.S. DEPARTMENT OF JUSTICE, Office of Public Affairs (Dec. 12, 2022), https://www.justice.gov/opa/pr/eight-men-indicted-114-million-securities-fraud-scheme-orchestrated-through-social-media (emphasis added).

The government asks this Court to disregard the fair warning requirement and instruct a jury to conclude that Mr. Matlock's tweets were false based *solely* on his subsequent trading activity—a novel construction of § 1348 and the concept of "falsity" under other Chapter 63 fraud violations.  Permitting a jury to infer falsity based *solely* on subsequent conduct allegedly inconsistent with speculations about a security's future price or statements about a future intent to hold the security, would, in effect, either (1) restrict the sale of those securities or (2) criminalize the sale of those otherwise non-restricted securities.  But no prior judicial decision would have provided notice that tweeting a comment such as "this stock will go to 10+[7]" could be rendered criminal by subsequent sale of the security, even if a sale was executed seven minutes later, which is not uncommon for day traders.

Likewise, the Indictment's theory underpinning its conspiracy to commit securities fraud charge fails because it relies entirely on *lawful* conduct.  The Fifth Circuit has made clear a conspiracy charge cannot stand where a defendant "acted within the perimeters of his legal rights." *United States v. Hendricks*, 116 F.3d 1476, 1997 WL 304169, at *4 (5th Cir. 1997).  The defendants had no notice that their lawful actions could give rise to criminal liability: (i) making *bona fide* market purchases of non-restricted securities at prevailing market prices; (ii) recommending and encouraging others to buy those securities; (iii) speculating about the price those securities might reach; (iv) sharing truthful information about the companies on social media;[8] and (v) making *bona fide* sales of those non-restricted securities at prevailing market rates without disclosing the sales.

---

[7] This is in reference to Count 5 of the Indictment in which the government alleges Mr. Matlock's statement that "*$TRCH will be $10+ stock IMO*" is false.  This is clearly an *opinion*, not a factual assertion, and is not false using the proper objective standard under federal law. Also, it is worth noting that the stock did in fact ultimately go over $10. But even if it hadn't, the statement was an opinion, not a factual assertion that could be proven false.

[8] While the Indictment alleges the defendants posted "due diligence" about some securities it does not allege this "due diligence" was "false" nor does it provide any examples of "false" "due diligence."

These activities are not only *lawful*, but they are also integral to the daily routines and operations within the securities industry. Every day, millions of market participants engage in such activities, exchanging thoughts and strategies on both paid and unpaid chatrooms (Atlas was not paid), as well as on various social media platforms. Far from being nefarious, these practices are a testament to the open dialogue and shared knowledge that defines the industry and the protected freedoms ensured by the Constitution. The securities law in place do not in any way prohibit these individuals from cultivating a community that centers on their shared enthusiasm for day-trading. These individuals are free to impart their knowledge, share their unique perspectives on social media and other forums, and proudly display their triumphs, contributing to the rich make up of market dynamics.

A criminal prosecution that carries the threat of depriving a citizen of his freedom and imposing years of imprisonment is not an appropriate context for the government to undertake an unprecedented, essentially experimental, application of securities fraud statutes. Accordingly, for the reasons summarized above and demonstrated below, this Court should step in and summarily dismiss the government's attempted prosecutorial innovations beyond what is permitted under the law.

## STATEMENT OF FACTS

The Indictment charges Mr. Matlock with the following offenses:

  a. One count (Count 1) of conspiracy to commit securities fraud (18 U.S.C. § 1349), along with seven other defendants; and,

  b. Six counts (Counts 3,4,5,7,10 and 11) of securities fraud (18 U.S.C §§ 1348 & 2), in connection with six identified securities

Each of the six counts of securities fraud for which Mr. Matlock is charged is predicated on the government's allegation that he made "false" statements in posts on Twitter and Discord.

The government alleges the following scheme based on purportedly false tweets and posts: First, Mr. Matlock purchased shares through *bona fide* market transactions at prevailing market rates. Next, he posted "false" "price target[s]" and "falsely" expressed an intent to hold shares rather than sell them.  Lastly, he sold the shares sometime after the tweets in *bona fide* market transactions without disclosing his sales.

The Indictment identifies the following statements by Mr. Matlock, all of which the government alleges are "false":

**COUNT 3 SXTC** (SXT China Pharmaceuticals, Inc.)

1. "grabbed a few SXTC with you" (¶ 98)

**COUNT 5 TRCH** (Torchlight Energy Resources, Inc.)

2. "$TRCH probably going to 3 today. Merger to be done soon. Ripping right now. I have some under $2 but adding dips on it with Hugh." (¶ 37)
3. "$TRCH adding 100k shares here just now 4.22. We're setting up beautifully for power hour." (¶ 40)
4. "$TRCH will be a $10+ stock IMO." (¶ 40)
5. "$TRCH our core swing is from 2.50's to 2.60's[.] no need to worry. We need dips for health, keep rollin baby.") (¶ 41)

**COUNT 7 GTT** (GTT Communications, Inc.)

6. "I just added GTT with Ultra" (¶ 51)
7. "will [hold] overnight GTT… ." (¶ 51)

**COUNT 10 SURF** (Surface Oncology, Inc.)

8. "got a couple surf" (¶ 56)
9. "Hugh [HENNESSEY] gonna post. Im gonna wait a while then post." (¶ 56)
10. "Not posting until tomorrow [May 19, 2021] just because not enough time and he [HENNESSEY] didn't get everything ready." (¶ 56)
11. "Long SURF with [HENNESSEY] adding here on this pullback. . ." (¶ 58)

**COUNT 11 ALZN** (Alzamend Neuro, Inc.)

12. "holding ALZN" (¶ 67)

**COUNT 4  CBAT (**CBAK Energy Technology, Inc.)

The Indictment includes a count with general allegations regarding CBAK Energy Technology, Inc. (CBAT) but does not provide any alleged false statement by Mr. Matlock whatsoever.[9]

**COUNT 1 CONSPIRACY:** In addition to these counts, the Indictment also charges Mr. Matlock with a single count of conspiracy to commit securities fraud under 18 U.S.C. § 1349.   To support this count, the government proposes that "the defendants used their social media influence to pump and dump securities for their own financial gain." (Indictment, ¶ 12). "To do so," according to the government, "one or more of the defendants first purchased a security, often notifying other defendants of the purchase so that they, too, could 'load' and buy the security." (*Id*. at ¶ 13). It continues, "After purchasing or 'loading' the security, one or more of the defendants sought to 'pump' the price of that security by posting false or misleading information about the security on Twitter and Atlas Trading Discord so that other investors were induced to purchase the security and artificially increase its price."  (*Id*.). The government alleges the defendants sought "to conceal from . . . their Twitter followers and members of Atlas Trading Discord" their "true trading positions and intentions" and then "secretly sold their own shares" and "concealed their intent to sell." (*Id*. at ¶ 1, 14).

The Indictment does not point to any specific agreement among the defendants and the "other individuals, known and unknown" but contains allegations that some of the defendants discussed in chatrooms, private direct messages, and through tagging and posting on Twitter their positions in certain stocks. Critically, the Indictment does not allege the defendants all bought, posted about, and sold the same stocks or that they did so at the same time.

_____

<u>**ARGUMENT**</u>

**I.     LEGAL STANDARDS**

**A.     Failure to State an Offense**

An indictment is subject to dismissal for the government's failure to state an offense.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  "The propriety of granting a motion to dismiss an indictment…by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact…If a question of law is involved, then consideration of the motion is generally proper."  *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (internal quotation marks and citations omitted)).  "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated."  *Id*. (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)).

**B.     Due Process and Vagueness Doctrine**

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury…nor be deprived of life, liberty, or property without due process of law…" U.S. CONST. amend. V.  "It is a bedrock principle that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *United States v. Harra*, 985 F. 3d 196, 211 (3d Cir. 2021) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)) (alterations omitted).  "In the false statement context, because falsity and knowledge are distinct elements, this means the Government must prove a statement was false

beyond a reasonable doubt, regardless of the defendant's subjective intent…" *Id*. (citing *United States v. Castro*, 704 F.3d 125, 139 (3d Cir. 2013)).

Due process also requires that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Lanier*, 520 U.S. 259, 265 (1997) (internal quotations omitted). "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (emphasis added) (citations omitted). The Supreme Court has described "three related manifestations of the *fair warning requirement*." *Lanier*, 520 U.S. at 266 (emphasis added). "First, the vagueness doctrine bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id*. (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). "Second, as a sort of 'junior version of the vagueness doctrine'…the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Id*. (internal citation omitted). In that respect, the rule of lenity serves as "a means for upholding the Constitution's commitments to due process and the separation of powers…" as it "works to enforce the fair notice requirement by ensuring that an individual's liberty always prevails over ambiguous laws." *Wooden v. United States*, 142 S. Ct. 1063, 1082 (2022) (Gorsuch, J., concurring). Finally, "although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute…due process bars courts from applying a *novel construction* of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S.

at 266 (internal citations omitted) (emphasis added).  "In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."  *Id.*

### C.    As-Applied Vagueness Challenges

"Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis."  *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).  When faced with an "as-applied" vagueness challenge, a "court must first determine whether the statute 'give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law 'provide[s] explicit standards for those who apply [it].'"  *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir.1993) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), and *United States v. Schneiderman*, 968 F.2d 1564, 1568 (2d Cir. 1992))

## II.    THE INDICTMENT FAILS TO STATE A § 1348 SECURITIES FRAUD OFFENSE AGAINST MR. MATLOCK BECAUSE MR. MATLOCK'S POSTS AND TWEETS DO NOT CONTAIN ANY "FALSE" STATEMENTS AS A MATTER OF LAW.

### A.    Due Process Requires an Objective Standard for Falsity Under § 1348(2).

The government's securities fraud charges against Mr. Matlock and the other Defendants rely on § 1348(2)'s requisite "false or fraudulent pretenses, representations, or promises[.]"[10]  In order to prove falsity, however, the government incorrectly alleges actions that go to Mr. Matlock's *subjective* intent rather than looking at the *objective falsity* of a statement.

---

[10] As noted in ECF No. 262, ultimately, whether § 1348(1) applies here does not alter the analysis.  That the Indictment's description of counts two through twenty does not identify a particular subsection—and simply lists the separate elements of subsection (1) and (2)—does not lessen the Government's burden to prove falsity.

"[D]ue process demands that the falsity element stand independent of a defendant's subjective intent." *Harra*, 985 F. 3d at 211 (vacating § 1348 conviction where trial environment emphasized legally erroneous theories, including the government's "references to the falsity of Defendants' representations about past due loans"); *see also United States v. Campbell*, 64 F.3d 967, 974 (5th Cir. 1995) (reversing bank fraud and conspiracy to commit bank fraud convictions and finding government required to prove distinct elements that the statement "was false," that is, objective falsity, and that the defendant "knew the statement was false when he made it," that is, subjective falsity).

This means the government must prove beyond a reasonable doubt that a statement was "objectively false," regardless of the defendant's subjective intent. *Id*. at 211–12 (citing *United States v. Castro*, 704 F.3d 125, 139 (3d Cir. 2013)); *see also United States v. Ryan*, 580 F. Supp. 3d 359, 371 (E.D. La. 2022) (statute requiring proof of false bank entries "applies solely to statements of fact, not opinions"). And as the Fifth Circuit has recognized: "Of course, fraud claims must be based on misrepresentation of material fact, not opinion." *United States v. Matthews*, 31 Fed. App'x. 838, 2002 WL 261421, at *9 (5th Cir. 2002). A statement which makes no factual assertion cannot be characterized as "false" for an offense predicated on false statements or representations. *Williams v. United States*, 458 U.S. 279, 284 (1982); *see also United States v. Medeles*, 916 F.2d 195, 199–200, 202 (5th Cir. 1990) (reversing § 1344 wire fraud conviction because "deposit of a check is not an assertion about the balance in the account," thus the deposit of the insufficient funds checks alone did not "false or fraudulent pretenses, [or] representations").

Mr. Matlock's allegedly "false" posts and tweets fall primarily within two categories as cited in ECF 262: (1) speculations about the future price of stocks and (2) statements of future

intent to hold (not sell) a security.[11] Nevertheless, according to the government, the jury may *infer* those posts and tweets were somehow *false* because Matlock's subsequent trading activity suggests that his *subjective intent* rendered his posts or tweets false at the time the statements were made. *For example,* as demonstrated in the analysis below, the government attempts to infer falsity when Mr. Matlock speculates that a stock will go to a certain price, but then sells his shares before it reaches that price.

This is an incorrect application of the objective falsity standard that due process demands. The law requires that the government allege some objective indicia of falsity in the initial statement. Mr. Matlock's predictions or opinions are not false as a matter of law because the government has not and cannot allege some objective indicia of falsity. Making a prediction that a stock may go to ten dollars is not objectively false, rather it is a prediction/opinion. This is true no matter what Mr. Matlock's actions are after making that prediction. The Indictment's allegations rely *solely* on Mr. Matlock's purported subjective falsity, and therefore it fails to state a § 1348 securities fraud offense as a matter of law, and counts 2, 3, 4, 5, 7, 10 and 11 must be dismissed against Mr. Matlock. *See, e.g.*, *Fontenot*, 665 F.3d 640 (affirming dismissal of indictment where, as a matter of law, defendant did not make a false statement).

**B.    The Government Attempts to Apply an Incorrect *Subjective* Standard to Mr. Matlock's Statements and Therefore the Counts Against Him Should Be Dismissed.**

The following count by count analysis demonstrates the fatal defects in each of the government's allegations of securities fraud against Mr. Matlock:

---

[11] A third limited category for Mr. Matlock are factual assertions of actions he already took that the government, in several instances, concedes actually occurred  (such as the past purchase of stock).

**Count 3 – Re: SXTC (China SXT Pharmaceuticals, Inc.)**

| Relevant Paragraph(s) from Indictment | Alleged False Statement(s) |
|---|---|
| ¶ 27. At approximately 9:33:00 EST, MATLOCK similarly started selling shares of SXTC. At approximately 9:33:16 EST, MATLOCK falsely claimed in Atlas Trading Discord how he "grabbed a few SXTC with you," while he concealed that he was in the process of liquidating his position. By approximately 9:34:00 EST, MATLOCK sold all 146,097 shares of SXTC at an approximate price of $0.27 per share and for an approximate profit of $1,863.47. | "grabbed a few SXTC with you" |

Count 3 of the indictment should be dismissed against Mr. Matlock because it is predicated on an empirically non-false factual assertion -the statement "*grabbed a few SXTC with you*" which as a matter of law cannot be shown to be objectively false.  In this Count, the government demonstrates the empirical truth of the statement "*grabbed a few SXTC with you*" itself because it concedes that 45 seconds after making the statement, Matlock "sold" his shares of SXTC. Matlock could not have *sold* shares of SXTC unless he had, in fact at some point, bought, or "*grabbed*," shares of SXTC previously, as his statement says. Nowhere does the government attempt to reconcile the self-refuting logic of its allegations regarding SXTC.  Accordingly, the government has not alleged a statement in Count 3 that is capable of being "objectively false", in fact it is the exact opposite, and therefore the Count fails and should be dismissed.

**Count 4 – CBAT (CBAK Energy Technology, Inc.)**

Count 4 must be dismissed because the government has not alleged or cited *any* statement made by Mr. Matlock that could even be argued as serving as a predicate false statement with regard to this stock, CBAT.  A review of the Indictment (ECF No. 134), reveals no statements made by Mr. Matlock regarding CBAT whatsoever. This Count cannot stand without even an allegation of a false statement as required by § 1348(2)'s "false or fraudulent pretenses, representations, or promise" element, and therefore should be dismissed.

**Count 5 – Re: TRCH (Torchlight Energy Resources, Inc.)**

| Relevant Paragraph(s) from Indictment | Alleged False Statement(s) |
|---|---|
| ¶ 37.   On or about February 10, 2021, at approximately 10:13:38 EST, MATLOCK falsely claimed in a tweet: "$TRCH probably going to 3 today. Merger to be done soon. Ripping right now. I have some under $2 but adding dips on it with Hugh." At the approximate time of this tweet, TRCH was trading at an approximate price of $2.15 per share. | "$TRCH probably going to 3 today. Merger to be done soon. Ripping right now. I have some under $2 but adding dips on it with Hugh." |
| ¶ 38. On or about February 10, 2021, and between approximately 10:13:39 EST and approximately 10:22:00 EST, RYBARCZYK, DEEL, KNIGHT, COOPERMAN, HENNESSEY, and MATLOCK collectively sold approximately 286,413 shares of TRCH at an approximate average price of $2.22. In or around the time they were selling or dumping TRCH shares, DEEL, MATLOCK and HENNESSY continued to post purportedly positive information about TRCH on Atlas Trading Discord and Twitter. | No specific "purportedly positive information" directly cited or quoted. |
| ¶ 40.   On or about February 16, 2021, at approximately 13:36:37 EST, MATLOCK tweeted: "$TRCH adding 100k shares here just now 4.22. We're setting up beautifully for power hour." Approximately one minute later, at 13:37:49 EST, MATLOCK falsely tweeted that he believed "$TRCH will be a $10+ stock IMO." Starting at approximately 13:38:00 EST, MATLOCK started to sell his TRCH shares. By approximately 14:01:00 EST, MATLOCK had sold his entire position of approximately 100,000 TRCH shares at the approximate price of $4.45 per share and for an approximate profit of $22,828.62. | "$TRCH adding 100k shares here just now 4.22. We're setting up beautifully for power hour." "$TRCH will be a $10+ stock IMO." |
| ¶ 41.   Despite trading in and out of TRCH in or around the times of his social media messages, MATLOCK falsely claimed that he was a longer-term holder in TRCH on February 16, 2021, and tweeted: "$TRCH our core swing is from 2.50's to 2.60's[.] no need to worry. We need dips for health, keep rollin baby." | "$TRCH our core swing is from 2.50's to 2.60's[.] no need to worry. We need dips for health, keep rollin baby." |

The Indictment's paragraphs alleging that Mr. Matlock made false statements regarding

TRCH  describe what are unquestionably either 1) speculations/opinions about the future price of

a public company's non-restricted stock or (2) speculations about Mr. Matlock's intent to hold (or not sell) a security in the future. These statements are not objectively false as a matter of law and therefore Count 5 should be dismissed against Mr. Matlock.

Further, the government does not state with specificity how these statements are *false,* but nonetheless appears to be attempting to infer falsity based on an improper subjective standard. However, these statements are opinions and speculations as to future actions, they are not assertions of fact and as such are not capable of being "objectively false" as a matter of law under § 1348.

The statement, "*$TRCH probably going to 3 today*" is merely precatory price speculation/prediction, not an assertion of fact, and cannot be objectively false.

The statement, "*Merger to be done soon*" is a speculation statement about the timing based on publicly available information at the time (not on insider information and not charged as such), not able to be objectively false.

The statement "*Ripping right now*" is merely an opinion observation that TRCH had been rising in price. This is not only objectively not false as a matter of law, it is true and consistent with the government's allegations. *Cf.* Indictment ¶ 37 and ¶ 38 (alleging rise in price of TRCH from $2.15 to $2.22 during Feb. 10, 2021).

The statement, "*we're setting up beautifully for power hour*" is an opinion and not objectively false as a matter of law.

Mr. Matlock's two alleged statements regarding his trading of TRCH—"*I have some under $2 but adding dips on it with Hugh*" and "*$TRCH adding 100k shares here just now 4.22*"—are no more actionable as a matter of law and logic. These are statements of future intentions to buy stocks or assertions of verifiable facts.   These statements regarding his past purchase of TRCH

are not objectively false and his factual assertions are fully consistent with the government's allegations that Mr. Matlock *sold* TRCH on February 10 and February 16. He could not sell TRCH without having first purchased TRCH. There is no falsity in a statement stating that he bought a stock when he indeed bought the stock.

The statement, "*$TRCH will be a $10+ stock IMO*" is clearly an opinion/speculation, not a factual assertion, and not objectively false as a matter of law. In this case, Mr. Matlock actually goes so far as to say "IMO", an abbreviation of "In My Opinion."

This is a prime example of the government's improper application of a subjective standard for falsity. Here the government attempts to infer requisite falsity by pointing to the fact that Mr. Matlock at one point speculates that TRCH may go to $10+ (*in his opinion*) but then by not keeping the stock until it actually reached $10, his initial statement therefore must have been false. This, however, is a flawed syllogism and misapplies a subjective, not objective, standard of falsity that is required under § 1348. Speculating that a stock will go to $10+ and then selling that stock later before it reaches $10+ are not mutually exclusive whatsoever. Furthermore, the initial speculation or opinion that the stock will go to $10+ is not a factual assertion and is not objectively false as a matter of law. Additionally, there are no laws that apply to Mr. Matlock that would require him to somehow disclose to the public the fact that he sold and what his personal reasons for doing so were. Of important note, the rest of the story with this statement is that the stock TRCH did in fact eventually go to over $10, so Mr. Matlock's prediction in fact came true. Nevertheless, even if it hadn't was a prediction not capable of being false as a matter of law.

Similarly, the statement "*$TRCH our core swing is from 2.50's to 2.60's[.] no need to worry. We need dips for health, keep rollin baby*," is not objectively false, rather a statement of prediction and his opinion regarding TRCH's potential as a swing trade despite its fluctuations (i.e., dips) in

17

price.[12]  Again, the government fails to allege a statement that is capable of being "objectively false", making the government's speculation about Matlock's subjective intent irrelevant for purposes of the elements of § 1348.

For the reasons above Count 5 should be dismissed against Mr. Matlock in its entirety.

### Count 7 –  GTT (GTT Communications, Inc.)

| Relevant Paragraph(s) from Indictment | Alleged False Statement(s) |
|---|---|
| ¶ 51.  On   or   about   March   1,   2021,   between approximately  15:51:00  EST  and  15:57:00  EST, MATLOCK purchased approximately 317,916 shares of GTT at an approximate average price of $1.83. At approximately 16:07:46 EST, MATLOCK falsely claimed in Atlas Trading Discord that "I just added GTT with Ultra,"  a  reference  to  the  Discord  account  of RYBARCZYK,  and  without  disclosing  his  intent  to immediately sell his shares. Starting at approximately 16:08:00 EST, MATLOCK started to sell shares of GTT. By approximately 16:22:00 EST, MATLOCK had sold his entire position of approximately 317,916 GTT shares at the  approximate  price  of  $1.99  per  share  and  for  an approximate profit of $50,709.00. After selling all of his shares in GTT, MATLOCK falsely claimed in Atlas Trading Discord that he "will [hold] overnight GTT… ." | "I just added GTT with Ultra," "will [hold] overnight GTT… ." |

Here again, the government attempts to infer falsity into statements that are objectively not false and therefore Count 7 should be dismissed.

The statement, "*I just added GTT with Ultra*", is a factual assertion that is self-proven by the government's allegation that Mr. Matlock sold his shares of GTT.   Only if Mr. Matlock had indeed "added GTT" could he have been capable of selling his "entire position" in GTT, thus

---

[12] The Indictment omits the fact that as per the Government's own production, less than an hour after selling his position at $4.45 at 14:01:00 (2:01 PM) EST, Mr. Matlock traded back into TRCH and bought/sold the stock until 5:34 PM EST.  The Indictment omits the fact that as per the government's own production, Mr. Matlock continued to trade in/out of TRCH on February 18–19, March 22, June 16, June 21, and June 25— facts that would appear to be highly relevant to a grand jury's determination as to charges made against Mr. Matlock regarding TRCH.

making the first statement factually and objectively not false as a matter of law as alleged by the government.

The second statement attributed to Mr. Matlock—"*will [hold] overnight GTT*"— is predicated on statements regarding GTT at a time when Mr. Matlock—according to the government—no longer held any shares of GTT. Assuming the government's allegation is true for purposes of the instant Motion, Mr. Matlock was not holding the security at the time and thus he is outside the scope of securities laws such as § 1348 which the government is using to charge him. This statement is therefore immaterial to a § 1348 charge.  Furthermore, the government has not charged Mr. Matlock using any other statute, if one exists, that would make this act of speech unlawful.

The alleged statements in Count 7 are not objectively false as a matter of law, or immaterial and outside the purview of § 1348. Therefore, Count 7 should be dismissed against Mr. Matlock.

### Count 10 – SURF (Surface Oncology, Inc.)

| Relevant Paragraph(s) from Indictment | Alleged False Statement(s) |
|---|---|
| ¶ 58. On or about May 19, 2021, at approximately 9:57:20 EST, MATLOCK misleadingly claimed in a post in Atlas Trading Discord that he was "Long SURF with [HENNESSEY] adding here on this pullback . . . ," without disclosing his intent to sell his own shares. By the end of the day, MATLOCK had sold all of his shares of SURF at an approximate price of $8.871 per share and for an approximate profit of $102,507.18. | "Long SURF with [HENNESSEY] adding here on this pullback . . . ," |

For Count 10 we see the government allege that Mr. Matlock's statement—that he was "*Long SURF with [HENNESSEY] adding here on this pullback*"—was false, again based *solely* on Mr. Matlock actions with regards to the stock.  The government's theory of criminality is flawed.

Mr. Matlock's statement of future intent to hold (not sell) a security is not an assertion of fact capable of being "objectively false" in any manner sufficient to satisfy § 1348. Indeed, nothing in the securities laws prohibited Matlock from changing his mind, even if it were minutes after the statement was made.  The government here again inappropriately relies on allegations of subjective intent to support a count that lacks any alleged statement that could be objectively false as a matter of law.  Accordingly, Count 10 should be dismissed against Mr. Matlock.

### Count 11 – ALZN (Alzamend Neuro, Inc.)

| Relevant Paragraph(s) from Indictment | Alleged False Statement(s) |
|---|---|
| ¶ 67.   On or about June 30, 2021, at approximately 13:02:00 EST and through approximately 13:11:00 EST, MATLOCK sold 24,000 shares of ALZN at an approximate price of $11.66 per share and closed his position. While selling his shares, MATLOCK posted in Atlas Trading Discord about ALZN and falsely claimed that he was "holding ALZN" approximately 24 minutes after he closed his position. | "holding ALZN" |

Here the government's allegation fails as a matter of law because it is predicated on statements regarding ALZN at a time when Mr. Matlock—*according to the government*—no longer held any shares of ALZN. Assuming the government's allegation is true for purposes of the instant Motion, Mr. Matlock was not holding the security at the time and thus he is outside the scope of securities laws such as § 1348 which the government is using to charge him. As a result, it is not material to a § 1348 charge which regulates purchases and sales of securities, and which does not apply here. Furthermore, the government has not charged Mr. Matlock using any other statute, if one exists, that would make this act of speech unlawful. Since Mr. Matlock, according to the government was not trading in this security when the statement was made, the necessary elements for § 1348 charge cannot be met and this Count must be dismissed.

III.    **THIS PROSECUTION OF MR. MATLOCK, PREMISED ON THE GOVERNMENT'S NOVEL APPLICATION OF § 1348 AND § 1349, VIOLATES THE CONSTITUTIONAL COMMAND THAT A PERSON MUST HAVE FAIR WARNING THAT THEIR CONDUCT FALLS WITHIN THE SCOPE OF THOSE STATUTES.**

This argument has already been thoroughly briefed in Mr. Matlock's joint Motion to Dismiss with Constantinescu (ECF No. 262 pp. 13-28). That discussion fully applies to Mr. Matlock, who would respectfully refer the Court to that joint Motion.

In sum, as the Supreme Court has stated, "before criminal liability may be imposed for violation of any penal law, due process requires 'fair warning…of what the law intends.'" *Lanier*, 520 U.S. at 259 (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)). "Due process bars courts from applying a ***novel construction*** of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id*. at 266 (citations omitted) (emphasis added).

This prosecution, and the government's application of the statutes to the facts as presented in the Indictment, is unprecedented, unanticipated, and unconstitutional under the vagueness doctrine and its fair warning requirement.  Indeed, as set out at length in ECF No. 262 pp. 14-18, federal securities laws and regulations already establish the duties, rights, and obligations governing the conduct alleged in the Indictment, yet the facts as alleged in the Indictment make clear that the Defendants, individually and collectively, acted lawfully and in a manner consistent with the securities laws and regulations.[13]  The six § 1348 counts against Mr. Matlock, as alleged in the Indictment, violate the fair warning requirement because (i) the government's novel

---

[13] Under 18 U.S.C. § 1348, the alleged "scheme or artifice" must be either "in connection with" (subsection (1)) or "in connection with the purchase or sale of" (subsection (2)) "any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l)."  18 U.S.C. § 1348.  Because the statute seeks only to penalize conduct in relation to Section 12 registered securities, securities laws and SEC rules and guidance on securities registered under Section 12 are critical to understanding potential restrictions placed on the defendants transfer of securities and any disclosure requirements.

construction of the statute asserted here has never been applied by courts and (ii) Mr. Matlock's alleged conduct falls outside the scope of established securities laws which already regulate the sale of securities.  The government's theory with respect to the requisite "falsity" under § 1348 is unprecedented and has never been applied by courts in a manner that would have provided fair warning of the government's proposed application of the statute here.

Indeed, this case is the first of its kind—as is the government's proposed novel construction of § 1348 seeking to apply the statute to non-insiders in a manner that invites significant judicial expansion of existing securities laws. Specifically, the government seeks to judicially expand securities laws by applying the standards of the Investment Advisers Act ("IAA") to Matlock, but the IAA applies to persons who advise others about securities "for compensation." 15 U.S.C. § 80b-2(11). That is not Mr. Matlock.

Furthermore, a construction of § 1348 that restricts sale of securities based on the notion that the sale conflicts with prior statements speculating about the future price of the security has no basis in the securities laws, and the rule of lenity counsels against expanding the scope of § 1348 to create this novel form of criminal liability.  *See United States v. Bass*, 92 S. Ct. 515, 523 (1971) ("[L]egislatures not courts should define criminal activity"); *see also Wooden*, 142 S. Ct. at 1083 (Gorsuch, J., concurring) ("lenity's emphasis on fair notice… is about protecting an indispensable part of the rule of law—the promise that, whether or not individuals happen to read the law, they can suffer penalties *only for violating standing rules announced in advance*") (emphasis added).

Lastly, the Indictment's theory underpinning its conspiracy to commit securities fraud charge fails because it relies entirely on allegations describing *lawful* conduct.  "The elements of conspiracy under 18 U.S.C. § 1349 are: (1) two or more persons made an agreement to commit an

unlawful act; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined in the agreement willfully, with the intent to further the unlawful purpose." *United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014). As demonstrated above and as thoroughly discussed in ECF 262 pp. 23-28, the Defendants' underlying conduct was lawful and therefore a charge of conspiracy cannot be supported and must be dismissed. For these reasons above and delineated in ECF 262 pp. 23-28 Count 1 fails as a matter of law.

## CONCLUSION

The conduct and speech the government attempts to criminalize through a novel application is not only *lawful*, but integral to the functioning of the securities industry as we know it. Every day, millions of market participants exchange thoughts and strategies via various social media platforms making predictions and speculations about securities. Far from being nefarious, these practices are a testament to the open dialogue and shared knowledge that defines the industry and the protected freedoms ensured by the Constitution. The securities laws in place do not in any way prohibit these individuals from cultivating a community that allows them to impart their knowledge, share their unique perspectives, and proudly display their triumphs, while contributing to the rich make up of market dynamics. A criminal prosecution that carries the threat of depriving a citizen of his constitutionally protected freedoms and threaten years of imprisonment for these activities is not an appropriate context for the government to pursue an unprecedented, essentially experimental application of securities fraud statutes. Such an expansion and novel application of Section 1348 violates the Due Process Clause of the Constitution. Accordingly, Mr. Matlock respectfully requests that the Court dismiss the Indictment and all counts against him and award any other relief deemed just and proper.

Dated: May 12, 2023

Respectfully submitted,

_____/s/_____

Luis A. Reyes
Texas Bar No. 90001831
Lreyes@ashcroftlawfirm.com
Telephone: (512) 380-1700

Johnny Sutton
Texas Bar No. 19534250
Jsutton@ashcroftlawfirm.com
Telephone: (512) 380-1700
ASHCROFT SUTTON REYES LLC
919 Congress Ave. Suite 1325
Austin, Texas 78701
Telephone: (512)-547-7883

William Stradley
STRADELY LAW FIRM
Texas Bar No. 19353100
1545 Heights Blvd
Houston, Texas 77008
Telephone: (713) 224-5455

*Attorneys for Defendant*
*Perry Matlock*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2023, a true and correct copy of the foregoing document was served electronically on all counsel of record via the Court's CM/ECF.

_____/s/_____

Luis A. Reyes
