**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **Case No. 4:22-cr-612** |
| | § | |
| **CONSTANTINESCU,** *et al.* | § | **The Honorable Andrew S. Hanen** |
| | § | |
| **Defendants.** | § | |

**United States' Response in Opposition to Defendant Matlock's Motion to Dismiss**

## <u>Table of Contents</u>

**Relevant Background**………………………………………………………………1

**Legal Standard**………………………………………………………………...7

**Argument**………………………………………………………………8

    **I.**    **Defendants' alleged false and fraudulent statements are precisely the sort of misleading "half truths" or material omissions proscribed by Section 1348**……...8

        A.  It is beyond dispute that misleading "half-truths" that omit or conceal material facts are "false" or "fraudulent" as a matter of law……………………………………8

        B.  Defendant's factual disputes with the Superseding Indictment's allegations demonstrate that the question of falsity must go to a jury…………………………12

    **II.**    **Section 1348 plainly prohibits schemes to defraud involving securities, the statute requires fraudulent intent, and such fraud schemes have long been prohibited, raising no Due Process issues here**…………………………………………19

**Conclusion**………………………………………………………………22

## Table of Authorities

**Cases**

*Blachly v. United States*, 380 F.2d 665 (5th Cir. 1967)............................................................9

*Costello v. United States*, 350 U.S. 359 (1956).....................................................................7

*Durland v. United States*, 161 U.S. 306 (1896)...................................................................20

*Gonzales v. Carhart*, 550 U.S. 124 (2007)..........................................................................19

*Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657 (5th Cir. 2004) ........................................11

*In re:BP p.l.c.. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779 (S.D. Tex. May 31, 2016).11

*Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016)
.......................................................................................................................................11

*McFadden v. United States*, 576 U.S. 186 (2015) .................................................................19

*Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015).. 10, 11

*SEC v. Huttoe*, 96-cv-2543, 1998 WL 34078092 (D.D.C. Sept. 14, 1998)...............................21

*United States v. Bailey*, 444 U.S. 394 (1980)........................................................................7

*United States v. Bases*, No. 18-cr-48, 2020 WL 2557342 (N.D. Ill. May 20, 2020) ...............20

*United States v. Campbell*, 64 F.3d 967 (5th Cir. 1995) .......................................................18

*United States v. Chanu*, 40 F.4th 528 (7th Cir. 2022)...........................................................10

*United States v. Cheng*, No. 4:20-cr-455, 2022 WL 112026 (S.D. Tex. Jan. 12, 2022). 8, 12, 14

*United States v. Coscia*, 100 F. Supp. 3d 653 (N.D. Ill. 2015)...............................................20

*United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001) ....................................................7

*United States v. Enger*, 427 F.3d 840 (10th Cir. 2005).........................................................21

*United States v. Franco*, 632 F.3d 880 (5th Cir. 2011).........................................................7

*United States v. Harra*, 985 F.3d 196 (3d Cir. 2021)...........................................................18

*United States v. Hogue*, 132 F.3d 1087 (5th Cir. 1998) .........................................................8

*United States v. Kay*, 359 F.3d 738 (5th Cir. 2004)..................................................7, 12, 13

*United States v. Mahaffy*, No. 05-cr-613, 2006 WL 2224518 (E.D.N.Y 2006) .........................9

*United States v. Martino*, 648 F.2d 367 (5th Cir. 1981)..........................................................9

*United States v. Matthews*, 31 Fed. App'x 838, 2002 WL 261421 (5th Cir. 2002)............. 9, 12

*United States v. Motz*, 652 F. Supp. 2d 284 (E.D.N.Y. 2009) ...............................................20

*United States v. Nai Fook Li*, 206 F.3d 56 (1st Cir. 2000) .....................................................7

*United States v. Neder*, 527 U.S. 1 (1999) .........................................................................10

*United States v. Rafoi*, No. 21-20658, 2023 WL 1811921 (5th Cir. Feb. 8, 2023) .................... 7

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) ........................................................ 7

*United States v. Sabo*, 4:23-cr-206 (S.D. Tex. May 25, 2023) ............................................ 2

*United States v. Stephens*, 421 F.3d 503 (7th Cir. 2005) ...................................................... 10

*United States v. Steven Gallagher*, No. 1:22-cr-122 (S.D.N.Y. July 6, 2022) ........................ 20

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ........................................................ 7

*United States v. Townley*, 665 F.2d 579 (5th Cir. 1982) ........................................................ 9

*Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) .................................................... 10

*Zweig v. Hearst Corp.*, 594 F.2d 1261 (9th Cir. 1979) ........................................................ 21

## Statutes

18 U.S.C. § 1348 ................................................................................................. *passim*

18 U.S.C. § 1349 ................................................................................................. 1, 8

18 U.S.C. § 1957 ................................................................................................. 1

## Other Authorities

148 Cong. Rec. S7420–21 (daily ed. July 26, 2002) (statement of Sen. Leahy), *available at* 2002 WL 1731002) ............................................................................................ 10, 20

Fifth Circuit Committee on Pattern Jury Instructions, Pattern Jury Instructions (Criminal Cases), § 2.57, "Wire Fraud," (2019 ed.) .................................................................... 10, 15

Fifth Circuit Committee on Pattern Jury Instructions, Pattern Jury Instructions (Criminal Cases), § 2.66, "Bank Fraud," (2019 ed.) .................................................................... 10

Misrepresentation, Black's Law Dictionary (11th ed. 2019) .................................................. 10

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 109, p. 755 (5th ed. 1984) .......................................................................................... 11

The United States, by and through undersigned counsel, respectfully submits this brief explaining why the Court should deny Defendant Matlock's Motion to Dismiss (ECF No. 269). In his Motion, Defendant advances the same two central arguments set forth in Defendant Constantinescu's Second Motion to Dismiss (ECF No. 262), often using identical language. Those arguments fail here for the same reasons previously explained.[1] (ECF No. 295.) Specifically, (1) Defendants' alleged false and fraudulent statements are precisely the sort of misleading "half-truths" or omissions of material fact proscribed by Section 1348; and (2) Section 1348 clearly prohibits schemes to defraud involving securities, and such scheme have long been prohibited, such that this prosecution comports fully with the Due Process Clause.

## Relevant Background

The Superseding Indictment (ECF No. 134), returned by the Grand Jury on February 8, 2023, charges Defendants with a conspiracy to commit securities fraud (Count 1, 18 U.S.C. § 1349), nineteen substantive counts of securities fraud (Counts 2–20, 18 U.S.C. § 1348), and one count of money laundering (Count 21, 18 U.S.C. § 1957). Defendant Matlock himself is charged with the conspiracy (Count 1), and six substantive counts of securities fraud (Counts 3, 4, 5, 7, 10 & 11).

The United States incorporates by reference its extended exposition of the Superseding Indictment in multiple other filings.[2] (*See, e.g.*, ECF Nos. 174 and 295.) As to Defendant Matlock

---

[1] To the extent the arguments in the Motion apply to other Defendants in this case, either by explicit adoption or implication, the United States intends for its responses to apply to all other relevant Defendants as well. (*See, e.g.*, Def.'s Br. (ECF No. 269 ("Br.")) at n.1.) Further, in an effort to maximize judicial economy by not restating all facts or arguments in full, the United States intends for all of its responses to Defendants' various motions to dismiss to be read together, to the extent that facts or argument presented in one response are relevant to another.

[2] The United States presumes the Court, by now, is familiar with the allegations of the Superseding Indictment. As such, the United States highlights only pertinent portions here and incorporates the full document by reference.

specifically, paragraph 3 provides brief background about Defendant, including information about his Twitter account with over 300,000 followers, and his Discord account used as a founder of Atlas Trading Discord. (Superseding Indictment ("SI") ¶ 3.)

As the Court is familiar, paragraphs 10 through 19 provide more details of the charged scheme, including general descriptions and allegations of the scheme's operation, as well as specific discussions concerning the scheme. (*Id.* ¶¶ 10–19.) For example, paragraph 15 alleges how the Defendants sought to mislead their social media followers by lying to cover up the scheme. The paragraph explains how "[o]n or about November 10, 2020, MATLOCK falsely maintained on Atlas Trading Discord that he did "NOT post plays so I can scalp 2 cents on my followers like they want you to believe. I WOULDN'T BE HERE IF I DID THAT. . . . My GOAL is to help THIS group [make] money and help make THIS group successful." (*Id.* ¶ 15.)

Paragraph 17 describes a conversation between Defendant Matlock and "CC-1," now known to the Court as Defendant Francis Sabo, who recently pleaded guilty to the securities fraud conspiracy alleged in this case. *See United States v. Sabo*, 4:23-cr-206 (S.D. Tex. May 25, 2023) (ECF No. 20). In the quoted conversation, "CC-1" (Sabo) described how the scheme worked, and stated: "hey the patterns is becoming to [sic] obvious with Atlas [Trading Discord]. quickly gonna become exposed like the stocktwits pump bros." (SI ¶ 17.) In that conversation, Defendant is alleged to have stated: "i know how it looks." (*Id.*)

Paragraph 18 describes a private Discord exchange between Defendants Matlock and Constantinescu a/k/a Constantin in which Constantin expresses similar concerns with the scheme being discovered, writing: "It looks like we are front loading . . . Yea when you post right after . . . So we gotta look less obvious." (*Id.* ¶ 18.) Defendant Matlock's side of the conversation is

missing because, as the United States understands, Defendant Matlock deleted certain of his Discord messages and posts prior to the United States obtaining them.

The Superseding Indictment's ensuing paragraphs 21 through 115 provide copious details from examples of the scheme's execution in ten different stocks. The Superseding Indictment alleges Defendant was involved in seven of those described examples of the scheme's execution. (*Id.* ¶¶ 32–42, 54–71, 101–102.) Six of those examples feature details about Defendant's social media activity in furtherance of the scheme for the stock tickers SXTC, TRCH, GTT, SURF, ALZN, and CEI. (*Id.* ¶¶ 21–71, 92–100.)

For example, the Superseding Indictment alleges with respect to SXTC that on or about September 14, 2020, between approximately 9:09:00 EST and 9:31:00 EST, Defendant purchased approximately 146,097 shares of SXTC at the approximate price of $0.257 per share. (*Id.* ¶ 25.) Defendants Matlock, Deel, and Rybarczyk then allegedly executed the pump-and-dump of SXTC. For example, the Superseding Indictment alleges that, at approximately 9:33:00 EST, Defendant began selling shares of SXTC. (*Id.* ¶ 27.) Wile in the midst of selling shares, at approximately 9:33:16 EST, Defendant allegedly falsely claimed in Atlas Trading Discord how he "grabbed a few SXTC with you," while he concealed that he was actually in the process of liquidating his position. (*Id.*) By approximately 9:34:00 EST, Defendant sold all 146,097 shares of SXTC at an approximate price of $0.27 per shares and for an approximate profit of $1,863.47, as alleged. (*Id.*)

Regarding TRCH, the Superseding Indictment alleges that Defendant posted numerous times in furtherance of the scheme. (*Id.* ¶ 32–42.) For example, on or about February 16, 2021, Defendant is alleged to have tweeted, at approximately 13:36:37 EST, "$TRCH adding 100k shares here just now 4.22. We're setting up beautifully for power hour." (*Id.* ¶ 40.) Approximately one minute later, at 13:37:49 EST, Defendant allegedly falsely tweeted that he believed "$TRCH

will be a $10+ stock IMO." (*Id.*) Then, about 11 seconds later at approximately 13:38:00 EST, Defendant is alleged to have begun selling his TRCH shares. (*Id.*) By approximately 14:01:00 EST, Defendant had sold his entire position of approximately 100,000 TRCH shares at the approximate price of $4.45 per share and for an approximate profit of $22,828.62, as alleged. (*Id.*) Despite trading in and out of TRCH in or around the times of his social media messages, Defendant is alleged to have lied to cover up the scheme, falsely claiming that he was a long-term holder of TRCH by tweeting: "$TRCH our core swing is from 2.50's to 2.60's[.] no need to worry. We need dips for health, keep rollin baby." (*Id.* ¶ 41.)

Regarding GTT, the Superseding Indictment alleges that on or about March 1, 2021, between approximately 15:51:00 EST and 15:57:00 EST, Defendant purchased approximately 317,916 shares of GTT at an approximate average price of $1.83. (*Id.* ¶ 51.) At approximately 16:07:46 EST, Defendant falsely claimed in Atlas Trading Discord that "I just added GTT with Ultra," a reference to Defendant Rybarczyk, and without disclosing Defendant's intent to immediately sell his shares, as alleged. (*Id.*) Starting at approximately 16:08:00 EST, Defendant allegedly began to sell shares of GTT. (*Id.*) By approximately 16:22:00 EST, Defendant had sold his entire position of approximately 317,916 GTT shares at the approximate price of $1.99 per share and for an approximate profit of $50,709.00, as alleged. (*Id.*) After selling all of his shares in GTT, Defendant again allegedly lied to cover up the scheme, falsely claiming in Atlas Trading Discord that he "will [hold] overnight GTT . . . ." (*Id.*)

Regarding SURF, the Superseding Indictment alleges that on or about May 18, 2021, in between purchasing SURF shares, Defendant allegedly privately messaged CC-1 (Defendant Sabo) on Discord stating he "got a couple surf" and "Hugh [HENNESSEY] gonna post. Im gonna wait a while then post. . . . Not posting until tomorrow [May 19, 2021] just because not enough

4

time and he [HENNESSEY didn't get everything ready." (*Id.* ¶ 56.) On or about the following day, May 19, 2021, Defendant Hennessey in fact began posting about SURF in furtherance of the pump-and-dump scheme, as alleged. (*Id.* ¶ 57.) Also on or about May 19, 2021, at approximately 9:57:20 EST, Defendant Matlock misleadingly claimed in a post in Atlas Trading Discord that he was "Long SURF with [HENNESSEY] adding here on this pullback . . . ," without disclosing his intent to sell his own shares, as alleged. (*Id.* ¶ 58.) By the end of that day, Defendant had sold all of his SURF shares at an approximate price of $8.871 per share and for an approximate profit of $102,507.18. (*Id.* ¶ 58.)

Regarding ALZN, the Superseding Indictment alleges that on about June 30, 2021, between approximately 12:24:00 EST and 13:01:00 EST, Defendants Matlock, Deel, and Cooperman purchased approximately 82,209 shares of ALZN at an approximate average price of $11.11 per share. (*Id.* ¶ 64.) The Superseding Indictment goes on to allege how Defendants Deel and Rybarczyk coordinated the pump and dump by private message before beginning to execute it with public posts. (*See id.* ¶¶ 65–66.) Further, at approximately 13:02:00 EST and through approximately 13:11:00 EST, in the midst of the pump and dump, Defendant Matlock allegedly sold 24,000 shares of ALZN at an approximate price of $11.66 per share and closed his position. (*Id.* ¶ 67.) While selling his shares, Defendant allegedly posted in Atlas Trading Discord about ALZN and falsely claimed that he was "holding ALZN" approximately 24 minutes after he had closed his position. (*Id.*)

Regarding CEI, the Superseding Indictment alleges a collective execution of the scheme in or around August 2021 to in or around October 2021 involving Defendants Matlock, Constantin, Ryarczyk, Deel, Hrvatin, and Cooperman. (*Id.* ¶¶ 92–100.) As an example of Defendant Matlock's involvement, the Superseding Indictment alleges that on or about August 4, 2021, at approximately

15:38:17 EST, Defendant falsely claimed in Atlas Trading Discord that he was "[a]dding CEI with [DEEL] that's cheap AF." (*Id.* ¶ 94(a).) Starting at approximately 15:39:00 EST, Defendant began to sell the 825,429 shares of CEI that he had previously purchased at an approximate price of $0.465. (*Id.*) By approximately 15:54:00 EST, Defendant had sold approximately all shares of CEI for an approximate profit of $11,836.51. (*Id.*)

As another example of Defendant's involvement in the pump-and-dump of CEI, the Superseding Indictment alleges that on or about September 10, 2021, at approximately 15:45:00 EST, Defendant purchased approximately 130,000 shares of CEI at approximately $1.507 per share. (*Id.* ¶ 96.) At approximately 15:46:24 EST, Defendant falsely claimed in Atlas Trading Discord that "CEI looking good." (*Id.*) At approximately 15:47:00 EST, Defendant sold all 130,000 shares of CEI at an approximate price of $1.5111 for an approximate profit of $165.49. (*Id.*)

The Superseding Indictment then incorporates all that and other information describing the scheme into the central paragraphs charging the substantive securities fraud counts and conspiracy to commit the same. (*Id.* ¶¶ 116–121.)

On March 31, 2023, the United States produced to the defense, voluntarily and to maintain the October 23, 2023 trial date, the stock tickers and time periods of trading that may be at issue for trial.[3] By the June 15, 2023 expert disclosure date, the United States will specifically identify— among Defendants' social media records that the United States had produced in January 2023— the full set of Defendants' social media posts that the United States contends are false or fraudulent in furtherance of the scheme and may be at issue as such for trial.

---

[3] Note that the United States reserved the right to make any necessary edits to this voluntary disclosure that may come to light during the expert process by the expert disclosure deadline, which is June 15, 2023. (*See* Scheduling Order, ECF No. 254; Response, ECF No. 234, Exs. 1–2.)

## Legal Standard

It is beyond dispute that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). "The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (quoting *United States v. Nai Fook Li*, 206 F.3d 56, 61 (1st Cir. 2000) (en banc), *cert. denied*, 531 U.S. 956 (2000)).

An indictment is constitutionally sufficient if it (1) contains the offense elements, (2) fairly informs the defendant of the charge, and (3) enables him to plead an acquittal or conviction as a bar to future prosecutions of the same offense. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "Apart from meeting this minimum constitutional standard, the government need not describe all evidentiary details establishing the facts of the [allegations.]" *United States v. Rafoi*, No. 21-20658, 2023 WL 1811921, at *3 (5th Cir. Feb. 8, 2023) (reversing district court's grant of defendants' motion to dismiss because indictment adequately conformed to minimal constitutional standards). An indictment that tracks the language of the statute is generally adequate. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 414 (1980); *United States v. Franco*, 632 F.3d 880, 884–885 (5th Cir. 2011) (per curiam). Only in "very rare cases" must an indictment specify in detail "how a particular element of a criminal charge will be met." *United States v. Stringer*, 730 F.3d 120, 125–26 (2d Cir. 2013).

In assessing a motion to dismiss, the Court is "required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (internal quotation and citation omitted). "[A] court only grants a motion to dismiss if, as a matter of law, the 'infirmity' is such that the indictment fails to allege

facts that, if true, would constitute a prosecutorial offense." *United States v. Cheng*, No. 4:20-cr-455, 2022 WL 112026, at \*5 (S.D. Tex. Jan. 12, 2022). "[A] court must deny a motion to dismiss if it relies on disputed facts." *Id.* (citing *Kay*, 359 F.3d at 742; *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

## Argument[4]

### III.   Defendants' alleged false and fraudulent statements are precisely the sort of misleading "half truths" or material omissions proscribed by Section 1348.

#### A. It is beyond dispute that misleading "half-truths" that omit or conceal material facts are "false" or "fraudulent" as a matter of law.

Defendants are charged with securities fraud under both prongs of 18 U.S.C. § 1348,[5] and conspiracy to commit the same under 18 U.S.C. § 1349. "[B]ecause the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes, it is useful to be guided by the numerous and well-established precedents on those statutes in construing this statue." *United States v. Mahaffy*, No. 05-cr-613, 2006 WL 2224518, at \*11

---

[4] Given that Defendant Matlock advances the same legal arguments (often through the exact same language) as Defendant Constantinescu's Second Motion to Dismiss (ECF No. 262), the United States includes truncated versions of the legal expositions from its Response to that Motion, and points the Court to that response for more comprehensive statements of the relevant law. (ECF No. 295.)

[5] As relevant to the issues in this Motion, Section 1348 states:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> (1) to **defraud** any person in connection with any . . . security . . . ; or
>
> (2) to obtain, by means of **false or fraudulent pretenses, representations, or promises**, any money or property in connection with the purchase or sale of any . . . security . . . shall be fined under this title, or imprisoned not more than 25 years or both.

18 U.S.C. § 1348 (emphasis added). Although Defendant's Motion focuses only on the term "false," both prongs are charged and a fraudulent scheme is alleged. The Court could ignore the term "false" altogether and still find the allegations of the Superseding Indictment should go to a jury.

(E.D.N.Y 2006); *see also United States v. Matthews*, 31 Fed. App'x 838, 2002 WL 261421, at \*8 (5th Cir. 2002) ("Modeled after the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, the bank fraud statute is interpreted in the light of the precedent interpreting those statutes."). Thus, Section 1348 imports the meanings of terms—importantly here, "defraud," "false," and "fraudulent," among others—from cases interpreting those terms in the mail, wire, and bank fraud statutes (§§ 1341, 1343, 1344). *See, e.g.*, *United States v. Smith*, 555 F. Supp. 3d 563, 573 (N.D. Ill. 2021) ("'Scheme to defraud' is a legal term of art littered throughout federal criminal law. . . . The term has the same meaning across the wire fraud, bank fraud, and commodities-fraud [§ 1348] statutes.").

The Fifth Circuit has long held that "[a] statement or representation may also be 'false' or 'fraudulent' when it constitutes a half truth or effectively conceals a material fact, with intent to defraud." *E.g.*, *United States v. Martino*, 648 F.2d 367, 393 (5th Cir. 1981). Indeed, "[t]he statements need not be false or fraudulent on their face, and the accused need not misrepresent any fact." *United States v. Townley*, 665 F.2d 579, 585 (5th Cir. 1982). As the Fifth Circuit explained in *United States v. Matthews*, "a scheme may be fraudulent even though no affirmative misrepresentation of fact be made. The deceitful *concealment of material facts* may also constitute actual fraud." 2002 WL 261421, at \*8 (quoting *Blachly v. United States*, 380 F.2d 665, 673–74 (5th Cir. 1967)); *see also id.* at 8 n.8.

Similarly, the Fifth Circuit Pattern Jury Instructions for wire fraud (§ 1343) make clear that: "[a] representation [pretense] . . . is 'false' if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation [pretense] . . . would also be 'false' if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with

the intent to defraud."[6] Fifth Circuit Committee on Pattern Jury Instructions, Pattern Jury Instructions (Criminal Cases), § 2.57, "Wire Fraud" (2019 ed.).

Thus, it is beyond dispute in the Fifth Circuit and across the nation that half-truths, or concealments of material fact, advanced with the intent to defraud may be "false" or fraudulent under the fraud statutes. *See, e.g., United States v. Neder*, 527 U.S. 1, 24–25 (1999) (holding that a material omission can amount to wire fraud); *United States v. Chanu*, 40 F.4th 528, 541 (7th Cir. 2022) ("Failure to give the whole story may also be fraud, especially when a defendant actively conceals information."); *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005) ("A half truth, or what is usually the same thing [as] a misleading omission, is actionable as fraud if it is intended to induce a false belief and resulting action to the advantage of the misleading and disadvantage of the misled.").[7] Therefore, purported opinions, predictions, and even facially true statements may be false and fraudulent statements or pretenses under the fraud laws. *See id.*

Opinions are also subject to liability under securities laws as the Supreme Court of the United States has clearly explained.[8] (*See* ECF No. 295 at 16–19.) As the Supreme Court wrote in

---

[6] The instructions for bank fraud (§ 1344) also contain a nearly identical definition of "false." *See* Fifth Circuit Pattern Crim. J. Instrs., § 2.66, "Bank Fraud."

[7] Black's Law Dictionary defines a "fraudulent misrepresentation" as "[a] false statement that is known to be false or is made recklessly—without knowing or caring whether it is true or false—and that is intended to induce a party to detrimentally rely on it." Misrepresentation, Black's Law Dictionary (11th ed. 2019).

[8] The Court should not, as Defendants consistently invite it to do, give preference to Title 15 and cases interpreting its provisions over cases interpreting the Title 18 fraud statutes. As demonstrated by courts that have interpreted Section 1348, as well as its legislative history, Section 1348 was passed precisely to avoid becoming ensnared in the "psychic thicket" of concepts developed in the context of wholly different, hyper-technical securities law language and requirements developed in response to wholly different concerns (*e.g.*, vexatious civil litigation). *See, e.g., Motz*, 652 F. Supp. 2d at 294 (citing 148 Cong. Rec. S7420–21 (daily ed. July 26, 2002) (statement of Sen. Leahy), *available at* 2002 WL 1731002); *see also Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185 n.2 (2015); *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092, 1109 (1991). Further, the Court in both *Omnicare* and *Virginia Bankshares* consistently and repeatedly stated that its rulings in those cases were made in the context of the securities law sections at issue. *See, e.g., Omnicare*, 575 U.S. at 184; *Va. Bankshares*, 501

*Omnicare* regarding "expressions of opinion[,] . . . every such statement explicitly affirms one fact: that the speaker actually holds the stated belief." 575 U.S. at 185 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 109, p. 755 (5th ed. 1984) ("[A]n expression of opinion is always a statement of . . . the fact of the belief, the existing state of mind, of the one who asserts it.")). When the speaker does not, in fact, sincerely hold that opinion at the time of expressing it, the stated opinion is a false statement of fact about that opinion or belief. *See id.*

Both the Fifth Circuit and this Court have easily adopted this reasoning. *See, e.g.,* *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 670 (5th Cir. 2004) ("A statement of belief is only open to objection where the evidence shows that the speaker did not in fact hold that belief and the statement made asserted something false or misleading about the subject matter." (citing *Va. Bankshares*, 501 U.S. at 1095–96)); *Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657, at *9 (S.D. Tex. July 6, 2016) ("Statements of pure opinion are only false if the speaker did not sincerely hold such opinion at the time of the statement." (citing *Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185–86 (2015))); *In re: BP p.l.c.. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779, at *9 (S.D. Tex. May 31, 2016) ("[A] speaker may be held liable for a statement of opinion if the plaintiff can prove 'that the speaker did not hold the belief she professed. This proposition is relatively uncontroversial and was already widely accepted by federal courts, including the Fifth Circuit." (quoting *Omnicare*, at 185–86)).

---

U.S. at 1087. This Court needs nothing more than the law of criminal fraud, plain and simple, to determine that the disputed facts of this case should go to a jury. *See supra* at 8–11.

**B. Defendant's factual disputes with the Superseding Indictment's allegations demonstrate that the question of falsity must go to a jury.**

That entire body of law—almost completely ignored by Defendants—makes clear the Superseding Indictment is legally sufficient, and its allegations must go to the jury.

Defendants' at-issue statements are so numerous and diverse that they are not all alleged to be false, fraudulent, or misleading in precisely the same way and they do not permit easy categorization. But they all do fall squarely under the umbrella of fraud: they are exactly the quintessential "half-truths," implied misrepresentations, or omissions that paint a public perception of doing one thing, while concealing the privately harbored fraudulent intent to do another. *Compare* (SI ¶¶ 54–62) *with Matthews*, 2002 WL 261421, at *8.

The Superseding Indictment adequately alleges a securities fraud scheme based precisely on these types of false and fraudulent statements. Those allegations must be taken as true. *E.g.*, *Kay*, 359 F.3d at 742. Thus, the Court need go no further to conclude that this issue must go to the jury. *Cheng*, 2022 WL 112026 at *5.

Defendant's lengthy dispute with the Superseding Indictment's allegations serves only to highlight that these are jury issues. Demonstrating the factual nature of this dispute, *seven* of the approximately nine pages on which Defendant makes this argument *do not contain a single case citation*. (*Compare* Def.'s Br. (ECF No. 269 ("Br.")) at 13–20 *with id.* at 11–20.) This alone should demonstrate that the dispute over the statements' false or fraudulent nature is a jury issue. Those seven pages contain statement after statement and factual argument after factual argument stating Defendant's contentions about why each and every potential statement or clause isn't false or misleading. But the Superseding Indictment plainly alleges otherwise. Thus, it is up to a jury to decide. *Cheng*, 2022 WL 112026 at *5.

While the United States is grateful the Defendants chose to preview many of the factual arguments they plan make at trial, the United States declines their invitation to do the same in response. The Court simply does not need a line-by-line counter argument for each and every statement and why and how it is alleged to be false. Those are issues for the jury and are not constitutionally required for a valid indictment. *See, e.g.*, *Kay*, 359 F.3d at 761 (reversing district court's dismissal of indictment that was barebones and did not recite any particularized facts concerning an element). The Superseding Indictment, coupled with the unmistakable law of fraud, provides more than enough for the Court to decide a jury must hear this case—a fact that the Court already appears to understand. (*See* Apr. 12, 2023 Hr'g Tr. ("Tr.") at 23:22–24 ("When you say one thing and do another, isn't that what the jury, ultimately the fight is going to be over in front of the jury?").)

To respond generally, Defendant raises in the Motion two purportedly distinct categories of statements: (1) "speculations" about Defendants' intent to hold (or not sell) a security; and (2) "speculations" about the future price of a stock.[9] (Br. at 2.) Statements in "category one"— "speculations" about Defendants' present trading intentions—are generally statements of falsifiable fact or false or fraudulent pretenses. When Defendant posted publicly, for example, "$TRCH our core swing is from 2.50's to 2.60's[.] no need to worry. We need dips for health, keep rollin baby," that is a fact he represented to the world about his intention at the time—that he was in fact "swinging" TRCH. But, as alleged, that statement is false within the meaning of the

---

[9] The United States disagrees both that these two categories of statements are entirely distinct, and that all at issue statements fall squarely into only these two categories (which at least Defendant Matlock seems to recognize (*see* Br. 13 at n.11.)). For example, stating a future price target may also reasonably be understood as a statement of the trader's intention to hold shares until the stock reaches that price target, collapsing Defendants' two categories. But precisely categorizing each and every at-issue statement is unnecessary for the Court to reach the proper conclusion that the Superseding Indictment adequately alleges the crimes charged.

fraud laws, because he omitted and concealed that he was actually day trading and scalping in and out of TRCH that day—not in fact "swinging" TRCH.  Rather, Defendant was allegedly selling shares into the volume and hopeful price spike generated by the pump-and-dump posts, all with fraudulent intent.

Similarly, when Defendant allegedly posted that he "grabbed a few SXTC with you," that is alleged to be a fraudulent pretense.  Although literally true in that he had, in fact "grabbed a few SXTC" shares earlier, when he posted it, he was already in the process of selling those shares as alleged. (*See* SI ¶ 27.)  Yet that post fraudulently conveys the impression that Defendant was a recent buyer of SXTC with present intent to hold for some time, while omitting the material fact that he had actually already begun selling that position, all with fraudulent intent as alleged. (*See id.*)  Such allegations state a quintessential fraud.  It is up to the jury to decide what is true. *See, e.g., Cheng*, 2022 WL 112026 at *5.

Statements in "category two"—"speculations" about a stock's price like "TRCH will be a $10+ stock IMO"—present numerous bases on which the statements may be false or fraudulent.[10] How, and if, they are false are core questions of disputed fact that must go to a jury.  Critically, for example, such statements may be fairly understood actually as statements in the first category: statements of pure falsifiable fact about Defendant's present intentions.  For example, the statement above may fairly be understood as: "I am holding TRCH until it gets to $10+ per share, because it is my sincere opinion that the stock will reach that price."  Indeed, nowhere in the post itself does it make clear in any way that those were Defendant's "speculations" as he now maintains in his self-serving papers.  That word—"speculations"—was completely absent until it showed up in

---

[10] As noted, the defense makes category mistakes in its attempted delineation and sorting of the at-issue statements, which the United States only adopts in argument and to respond to the Motion.  The categories Defendant presents are not wholly analytically distinct, as demonstrated.

Defendant's brief. It is a classic, impermissible attempt to contest the allegations in the indictment by introducing facts outside the four corners of the indictment. Such an effort must wait for trial. *See, e.g.*, *Cheng*, 2022 WL 112026 at *5.

And the present, self-serving "speculation" explanation likely would have been important for followers to know: these supposedly successful stock traders who held themselves out to the public as wealthy due to their trading skill were simply speculating with no sound basis in fact and no intent themselves to follow those speculations. That itself may constitute a material omission or render the statement a fraudulent pretense, and it is precisely the sort of representation proscribed by the fraud law as laid out in the Fifth Circuit Jury Instructions. Pattern Jury Instructions (Criminal Cases), § 2.57 ("A representation [pretense] . . . is 'false' if it is known to be untrue or is *made with reckless indifference as to its truth or falsity*." (emphasis added)). Such statements also are objectively false statements of fact because it is alleged Defendants did not actually intend to hold the stock to those price targets—they both lied about their intent (objectively false) and had fraudulent intent while so doing (subjectively false). Defendants cannot reach outside the indictment to inject concepts that such statements were mere harmless speculation as a matter of law—that is not what is alleged and that is an argument only proper for a jury. *See, e.g.*, *Cheng*, 2022 WL 112026 at *5.

Such statements also may be understood as opinions that are similarly objectively falsifiable. Reasonable readers could understand those statements as conveying, "I believe TRCH will go to $10 per share," or "I believe the fair value of TRCH as the company stands today is $10 per share."[11] Understood in this way, these are squarely the types of false and misleading

---

[11] These sorts of statements may be fairly understood as a statements that the stock itself is either intrinsically a good investment, as it will rise to those levels, or that it will be trading at those levels within a reasonable proximity to the statement. Although these are short-hand statements, they could fairly be understood as statements of Defendants' belief in the company's current valuation: with this many shares

15

statements or fraudulent pretenses prohibited by the fraud laws when made with fraudulent intent.
*See supra* at 8–11.

In making such statements, Defendants painted a public perception that *they in fact believed in those price predictions*, while omitting and concealing the alleged truth that they did not so believe, all with fraudulent intent, *i.e.*, to induce others to part with money or property to Defendants' benefit. Thus, it is the defense arguments (not the Superseding Indictment) that conflate the two distinct elements of fraud: (1) objectively false or fraudulent pretenses and (2) subjective fraudulent intent. It is up to the jury to consider if and how the at-issue statements are false or fraudulent as alleged *and* whether Defendants had fraudulent intent in making them.

And the jury must consider those questions with the context of *all* relevant evidence. Underscoring Defendants' impermissible efforts to dismiss the case, Defendants repeatedly (and erroneously) speculate about how the United States intends to prove this case at trial. (*See, e.g.*, Br. at 2.) Defendant states in his brief no fewer than four italicized times that the Superseding Indictment relies "*solely*" on Defendants' public posts and trading records as evidence of intent. That is another false statement. The Superseding Indictment does not, as Defendant suggests, "ask the jury to infer falsity of the alleged statements based *solely* on Mr. Matlock's subsequent sales of the securities . . . ." (Br. at 2–3.) Rather, it is clear from a cursory read that there are myriad

---

outstanding and today's balance sheet, income statement, cash flow statement, and future prospects of the company, a fair price per share today is $10. Defendants allegedly held themselves out to the public as being skilled, wealthy stock traders to bolster their credibility and the effectiveness of their false pretenses, all of which supports the implication that there is some reasonable basis for their public statements about stocks. But it's unnecessary to even reach that level of detail because Defendants made the public statements as if it was their actual belief, the stock was not in fact trading at or anywhere near that price target, Defendant sold well prior to that target, and Defendant made the statement at the same time concealing the alleged truth both that it was not in fact his belief and his fraudulent intent. That is what is alleged and must be taken as true. Whether or not Defendants did so believe those predictions is an issue of fact for the jury. *See, e.g.*, *Cheng*, 2022 WL 112026 at *5.

types and sources of evidence that form distinct bases to infer that Defendants did not, in fact, believe what they were saying publicly.

Even if public posting and contrary trading records were the only basis in the Superseding Indictment from which to infer falsity, that would be sufficient circumstantial evidence of a disputed intent for a jury to decide the truth. But comparison of the trade and tweet records is only one of the many types of intent evidence in the Superseding Indictment that the defense *completely ignores*. Other intent evidence that is clearly laid out within the four corners of the Superseding Indictment include:

- Private communications coordinating the scheme, including Defendant Matlock's own (*e.g.*, SI ¶¶ 17, 18, 22, 24, 26, 56–61, 65–70, 103);

- Private communications that are contrary to Defendants' publicly declared sentiments (*compare id.* ¶ 109 *with id.* ¶ 110);

- Public messages attempting to cover up the scheme that differ from Defendants' private sentiments or trading activity (*e.g.*, *id.* ¶¶ 15, 17–18, 51);

- Recorded conversations in which several Defendants discuss their scheme and demonstrate their fraudulent intent (*e.g.*, *id.* ¶¶ 45–50);

- All along with both the trading and social media records and the general allegations of the details of the scheme (*e.g.*, *id.* ¶¶ 1, 13–14, 20–121).

*See supra* at 1–6. This all must be accepted as true. *Kay*, 359 F.3d at 742. And there will be far more at trial. The defense takes a different view of the evidence. But, as this very Court has recognized, "a court must deny a motion to dismiss if it relies on disputed facts." *Cheng*, 2022 WL 112026 at *5; *see also* (Tr. at 23:22–24).

The cases cited by Defendant do not change this conclusion.[12] (*See* ECF No. 295 at 19–23.) For example, *United States v. Harra*, 985 F.3d 196 (3d Cir. 2021) is entirely consistent with, and demonstrates the legality of, the fraud alleged in this case for all the reasons previously discussed. (*See id.*) Similarly, the check-kiting cases Defendants cite are inapposite because, as the cases state, the checks themselves are not statements that make factual assertions, whereas Defendants' at-issue statements are just that for the reasons explained. (*See id.*) The rest of the cases are either irrelevant, unavailing, or both, as already explained and as unnecessary to repeat. (*See id.*)

*     *     *

At base, the defense arguments set forth a fundamentally mistaken understanding of the law of fraud. It is beyond dispute that statements may be false or fraudulent for purposes of the fraud statutes when they are misleading half-truths or omissions made with fraudulent intent. *See surpa* at 8–11. That is what the Superseding Indictment alleges. A jury must decide if it is so. *See, e.g.*, *Cheng*, 2022 WL 112026 at *5.

---

[12] Shockingly, Defendants double down on their terribly misleading parenthetical description of *United States v. Campbell*. *Compare United States v. Campbell*, 64 F.3d 967, 977–78 (5th Cir. 1995) *with* (Br. at 12); *see also* (ECF No. 295 at 22 n.16.). That opinion held that the trial evidence was sufficient to support Defendant's conviction for making a false entry in bank records under 18 U.S.C. § 1005, but insufficient to sustain the convictions for bank fraud (18 U.S.C. § 1344) and conspiracy to commit the same (18 U.S.C. § 371), because there was not sufficient trial evidence of "*material* misrepresentations . . . ." *Campbell*, 64 F.3d at 977–78. The opinion said nothing with respect to the fraud counts about the proposition for which the defense cites it and erroneously describes in their parenthetical, *i.e.*, the distinction between objective and subjective falsity in the context of bank fraud. *Compare id. with* (Br. at 12). Defendants' pin citation, and the quoted language in the parenthetical, references the portion of the opinion simply *reciting the elements of the Section 1005 charge*, the count of conviction that court affirmed, not the bank fraud charges the defense misleadingly describes as relating to that quoted language. *Compare id. with* (Br. at 12).

**IV.    Section 1348 plainly prohibits schemes to defraud involving securities, the statute requires fraudulent intent, and such fraud schemes have long been prohibited, raising no Due Process issues here.**

As Defendant himself explained, this argument was already thoroughly briefed in Defendant Constantinescu's Motion. (Br. at 21.) The United States has already thoroughly responded and demonstrated why the argument is unavailing and the Court should reject it.[13] (*See* ECF No. 295 at 24–38.)

The text of Section 1348 is clear in its scope and application. It prohibits schemes (1) to defraud in connection with any security; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any security.[14] *See* 18 U.S.C. § 1348. This is understandable to any ordinary person: the statute prohibits schemes to defraud involving securities.

Critically, Section 1348 has "a scienter requirement" which "alleviate[s] vagueness concerns." *McFadden v. United States*, 576 U.S. 186, 197 (2015) (internal quotations and citation omitted). To obtain a conviction, the United States must prove (and has alleged) that Defendants had the specific intent to defraud—in other words, they knew *exactly* what they were doing when they were doing it. *Compare Gonzales v. Carhart*, 550 U.S. 124, 148 (2007) *with* (SI ¶ 40 ("We're robbing f*cking idiots of their money."), ¶ 18 ("we gotta look less obvious")).

Despite the statute's relatively recent vintage, numerous courts have already easily denied vagueness challenges to Section 1348. *See, e.g.*, *United States v. Motz*, 652 F. Supp. 2d 284, 295

---

[13] Only for the sake of lawyerly thoroughness, the United States again expressly incorporates that discussion here, to which the Court should look.

[14] This excerpt omits statutory language for ease and on the presumption that the Court is familiar with the text. Note, however, that the omitted language supplies further particularity, requiring the securities covered to be those "of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)) . . . ." 18 U.S.C. § 1348.

(E.D.N.Y. 2009) (internal quotations and citations omitted); s*ee also United States v. Smith*, 555 F. Supp. 3d 563, 577–79 (N.D. Ill. 2021); *United States v. Bases*, No. 18-cr-48, 2020 WL 2557342, at *11–13 (N.D. Ill. May 20, 2020); *United States v. Coscia*, 100 F. Supp. 3d 653, 659–61 (N.D. Ill. 2015), *aff'd*, 866 F.3d 782 (7th Cir. 2017). Indeed, as one court recognized, "[a]ccording to the legislative history, the overarching purpose of the statute was to broaden the range of conduct proscribed by existing federal securities laws." *Motz*, 652 F. Supp. 2d at 294 (citing 148 Cong. Rec. S7420–21 (daily ed. July 26, 2002) (statement of Sen. Leahy), *available at* 2002 WL 1731002).

Nor does any absence of authority interpreting Section 1348 under facts precisely such as these fail to provide Defendants notice that their fraudulent scheme was prohibited. That is simply not the law. *See, e.g.*, *Smith*, 555 F. Supp. 3d at 577–79; *Bases*, 2020 WL 2557342, at *11–13 ("Regardless of the novelty of the conduct, so long as it falls within the statute's plain language, as is the case here, there is fair notice . . . .").

As these courts have recognized, schemes to defraud are nothing new. In its most basic elements as a scheme to defraud, the conduct alleged in the Superseding Indictment has been proscribed for generations. *See, e.g.*, *Durland v. United States*, 161 U.S. 306, 313 (1896) ("It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments. . . . In the light of this the [mail fraud] statute must be read, and, so read, it includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future. The significant fact is the intent and purpose.").

And pump-and-dump schemes themselves—saying one thing publicly about a stock and trading another way privately—have long been prohibited under numerous laws proscribing fraud. *See, e.g.*, *United States v. Steven Gallagher*, No. 1:22-cr-122 (S.D.N.Y. July 6, 2022) (ECF Nos.

1, 11, 28) (securities fraud guilty plea for social media-based pump and dump); *United States v. Enger*, 427 F.3d 840, 854 (10th Cir. 2005) (affirming securities fraud conviction where "[t]he record show[ed] that at the same time as Wenger had been advising readers to buy PanWorld stock, Wenger himself was selling his shares"); *SEC v. Huttoe*, 96-cv-2543, 1998 WL 34078092, at *7 (D.D.C. Sept. 14, 1998) (the "practice of selling when . . . recommending buying has long been understood to operate as a fraud or deceit upon investors"); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1265–66 (9th Cir. 1979) (finding that financial columnist's failure to reveal to readers his practice of "scalping" the stocks of companies he wrote about was a material nondisclosure creating liability).

Defendants' citation to a random smattering of irrelevant securities laws, and their related nonsensical arguments, do not change this conclusion as the United States has already explained at length. (*See* ECF No. 295 at 29–34.) This case has absolutely nothing to do with the Investment Advisors Act of 1940, 15 U.S.C. § 80b-1 *et seq.*, or any of the other securities laws Defendants cite. It is worth highlighting again that the set of cited securities laws Defendants attempt to put at issue *does not include laws concerning securities fraud*, which is all this case is about. Laws prohibiting securities fraud *must* be included in any proposed applicable set if Defendants are sincerely accepting the Superseding Indictment's allegations as true. They obviously are not, and this demonstrates the seriousness with which the Court should consider their claims.

The Court should also reject Defendant's throwaway finale argument that there is no conspiracy because there is no lawful object of the conspiracy. That is wrong for all the reasons discussed here and elsewhere. (ECF No. 295 at 34–38.) The Superseding Indictment adequately alleges both a securities fraud scheme and a conspiracy to commit the same, and those allegations should go to a jury.

## Conclusion

For all the reasons described here and in its other papers, the Court should reject Defendants' arguments and allow a jury to determine the truth.


Dated: June 9, 2023                     Respectfully submitted,


                                        GLENN S. LEON
                                        Chief, Fraud Section
                                        Criminal Division, Department of Justice

                        By:     */s/ John J. Liolos*
                                        Scott Armstrong, Assistant Chief
                                        John J. Liolos, Trial Attorney
                                        Fraud Section, Criminal Division
                                        United States Department of Justice
                                        1400 New York Ave. NW
                                        Washington, DC 20005
                                        Tel.: (202) 768-2246


                                        ALAMDAR HAMDANI
                                        United States Attorney
                                        Southern District of Texas

                        By:     */s/ Thomas Carter*
                                        Thomas H. Carter
                                        Assistant United States Attorney
                                        State Bar No.:  TX24048387
                                        1000 Louisiana Street, 25th Floor
                                        Houston, Texas 77002
                                        Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2023, I will cause the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section