IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612 |

**DEFENDANT PERRY "PJ" MATLOCK'S**
**REPLY IN SUPPORT OF JOINT[1] MOTION TO DISMISS**

It is clear that the government is determined, regardless of who it tramples over, to bypass the United States Congress and demand that this Court, by judicial *fiat*, expand the Department of Justice's criminal prosecutorial reach to encompass the heretofore lawful activities of countless individuals who personally participate in the stock market. It asks the Court to redefine the definition of what constitutes criminally false statements, removing the requirement of objective falsity altogether. And, among other things, it asks the Court to judicially create brand new regulatory disclosure obligations from whole cloth (for which failure to comply would mean criminal prosecution) that would apply to many millions of private individuals who ever dare to converse with others about stock purchases on social media or other forum. In its relentless pursuit, the government, the most powerful institution in our society, employs the full weight of its authority against Mr. Perry Matlock—a 39-year-old day-trader and family man who neither serves

---

[1] The arguments set forth in this Reply are approved and adopted by Co-Defendant Edward Constantinescu.

as a fiduciary nor operates as a financial advisor. The government wants to now send Mr. Matlock to prison for lawfully engaging in his livelihood and for sharing his personal opinions, speculations, and observations with his fellow day trading community.[2] The government in a tortured analysis calls these statements "false" and sets out to criminally prosecute Mr. Matlock, but as set forth in his Motion to Dismiss, the government's indictment against him is fatally flawed and warrants dismissal.

Despite the government's protestations to the contrary in its Response, it has not produced a single objectively false statement that would support a prosecution pursuant to 18 U.S.C. § 1348 against Mr. Matlock. In fact, the government's position leaves logic at the door by now contending that alleged statements of Mr. Matlock's that are <u>empirically true,</u> still constitute a falsity and are subject to criminal prosecution.[3] *See* Government's Response ("Response") [ECF No. 298] at 14.

The government's Response takes the misplaced and unsupported position that it can prove objective falsity solely based on evidence of *subjective intent*. But this conflation of two separate elements is prohibited by law and is a violation of Mr. Matlock's Due Process rights. As the courts have held, Due Process requires that when prosecuting an individual for making a false statement, the government must prove two elements—namely, that the defendant possessed the requisite subjective intent **and** made a statement of objective falsity. *See United States v. Harra*, 985 F. 3d 196, 211–12 (3d Cir. 2021) (explaining that "the falsity element stand[s] independent of a defendant's subjective intent"). However, the government's Superseding Indictment

---

[2] Day trading is a wholly lawful practice and recognized profession. According to FINRA, it refers to a trading strategy where an individual buys and sells (or sells and buys) the same security in a margin account on the same day in an attempt to profit from small movements in the price of the security. *See* FINRA day trading definition, available at https://www.finra.org/investors/investing/investment-products/stocks/day-trading.

[3] In the government's Response (ECF 298 at 14), the government takes the position that although Mr. Matlock's statement "grabbed a few SXTC with you" is "*literally true*", it still satisfies the falsity requirement to be considered false.

("Indictment") only states allegations of *subjective belief* and therefore without objective falsity it cannot stand as a matter of Due Process.

### A. Mr. Matlock's Motion Is Based on Law, Not A Dispute of Facts

Notwithstanding the government's editorializing, the basis for Mr. Matlock's Motion is not a pretrial challenge to the evidence or a claim that the indictment is not pled with sufficient specificity, but rather that the facts alleged do not state an offense as a matter of law. As such, this Court is authorized to accept Mr. Matlock's Motion on its plain terms and decide. "[W]hether the indictment sufficiently alleges a crime is an issue of law, not of fact." *United States v. Mann*, 517 F.2d 259, 266–67 (5th Cir. 1975). "[T]he indictment is to be tested not by the truth of its allegations but 'by its sufficiency to charge an offense'[.]" *Id*. (quoting *United States v. Sampson*, 371 U.S. 75, 78–79 (1962)). Indeed, as the government notes, Mr. Matlock's motion methodically evaluates each of the false statements the government itself chose to allege in its Indictment and asks whether such statements, taken as true, are capable of constituting securities fraud under § 1348. The question of law in front of the Court is whether the alleged statements are capable of being objectively false as a matter of law.

Rather than engage in the applicable legal analysis, the government simply denies that it has any obligation to explain "why and how [the statements are] alleged to be [objectively] false", Response at 13, and offers a series of arguments laced with admissions that illustrate the problem raised by Mr. Matlock's Motion. *Id*. at 14 (acknowledging that challenged statement regarding SXTC is "literally true"), *id*. at 15 (positing that Mr. Matlock's opinions that are "objectively falsifiable"), and *id*. at 17 (erroneously alluding to "intent evidence" to show objective falsity purportedly in the form of "private communications", "[p]ublic messages", and "[r]ecorded conversations").

Even though the government labels Mr. Matlock's alleged statements as false in the Indictment, it does not dispute that those same statements consist of opinions, predictions or in some cases even empirically true facts. However, rather than address those glaring contradictions in an Indictment that uses the word "false" or "falsely" over 100 times, the government now essentially concedes that its case lacks objectively false statements and is built solely on subjective evidence of fraudulent intent demonstrating that the government's theory of prosecution is fundamentally defective as a matter of law and should be dismissed. *See United States v. Fontenot*, 665 F.3d 640, 645 (5th Cir. 2011) (affirming dismissal of indictment where, as a matter of law, defendant did not make a false statement); *see also Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (affirming dismissal under less-stringent civil standard on finding that "[a]lthough the complaint catalogs a number of statements made by the individual defendants, nothing in the complaint explains with adequate specificity how those statements were actually false or misleading").

B. **The Government Has Failed to Allege False Statements as a Matter of Law**

Regardless of the government's contortions around § 1348's statutory construction, its case against Mr. Matlock plainly hinges on a showing he made an objectively false statement subject to criminal prosecution. The inability to assert any objectively false statements is a fatal flaw and clear prosecutorial dilemma, leading the government here to advance the same argument as the prosecution in *Harra*: "that the actual falsity of Defendants' statements is 'irrelevant'" and that intent alone is sufficient to prove the elements of the crime. *Compare* 985 F. 3d at 212 *and* Response at 8 n.5 ("The Court could ignore the term 'false' altogether and still find the allegations in the Superseding Indictment should go to a jury."). And the government's effort to lighten its burden under Due Process is as misguided here as it was in *Harra*. To prove crime of fraud under

4

the fraud statutes, "the Government must show not merely that a defendant subjectively intended to lie, but also that the statement in question was objectively false." *Id*. In an attempt to have the Court look past this fatal defect, the government impermissibly conflates the two elements in a convoluted attempt to explain how the objective standard is purportedly met by citing to allegations of subjective intent.

The government cites to a number of cases in attempting to marshal support for the notion that subjective intent can be used to prove objective falsity, but a close look at those cases reveals exactly what objectively false statements actually look like (and it is nothing like the opinions, speculations or predictions of Mr. Matlock). The cases the government cites each involved falsity which could be determined by an objective standard.[4] Here, in stark contrast, the government has not even alleged a statement by Mr. Matlock that could be objectively false, and, after issuing an Indictment riddled with allegations of false statements, the government now seeks to retroactively substitute a prosecution theory predicated entirely on subjective intent. However, neither the fraud statutes, nor the cases construing them, support the government's grossly strained position, and the Constitution does not permit such experimental criminal prosecution to be carried out on American citizens.[5] *See United States v. Brown*, 459 F.3d 509, 523 (5th Cir. 2006) ("Given our repeated exhortation against expanding federal criminal jurisdiction beyond specific federal statutes to the defining of common-law crimes, we resist the incremental expansion of a statute that is vague and

---

[4] *See United States v. Martino*, 648 F.2d 367, 380 (5th Cir. 1981) (arson ring concealed material facts in submitting inflated proof of loss statements to collect insurance proceed); *United States v. Moser*, 123 F.3d 813, 818–19 (5th Cir. 1997) (involving the use of blank certified money orders as "pretend money" to pay off debts); *United States v. Townley*, 665 F.2d 579, 583 (5th Cir. 1982) (involving misrepresentations in the contents of advertisements to solicit investment in and purchase of vending machines).

[5] Moreover, the civil standards cited by the government do not disturb this principal, since the Constitution does not demand civil claims contain a distinct scienter element. *See* Response at 10–11 (citing *Omnicare, Inc. v. Laborers Dist. Counsil Constr. Indus. Pension Fund*, 575 U.S. 175 (2015); *Va. Bankshores, Inc. v. Sandberg*, 501 U.S. 1083, 1087 (1991); *Greenberg v. Crossroads Sys. Inc.*, 364 F.3d 657, 670 (5th Cir. 2004); *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *9 (S.D. Tex. July 6, 2016); *In re: BP p.l.c. Securities Litig.*, 2016 WL 3090779 (S.D. Tex. May 31, 2016)).

5

amorphous on its face and depends for its constitutionality on the clarity divined from a jumble of disparate cases.").

      C.    **The Government Cannot Show That Matlock's Statements Were Objectively False So It Attempts to Change the Critera for Falsity.**

The government, when faced with the lack of the legally required objective falsity of the statements upon which its case relies, "declines" to respond or show the Court *how* it alleges objective falsity for all of Mr. Matlock's alleged false statements. Response at 17. Such an analysis is also glaringly absent from the government's Indictment. To be fair, the government does purport to provide examples of Mr. Matlock's false statements, *id*. at 18, but fails to meet the objective falsity requirement every time.

For example, the government asserts that when Mr. Matlock opines "TRCH will be a $10+ stock IMO [In My Opinion]" it is a criminally false statement. As a basis for this conclusion, the government again erroneously looks to the alleged subjective intent of Mr. Matlock at the time he made the statement, in essence postulating that he knew this could be interpreted to mean that he would "keep the stock" until it was $10, but that he never intended to do so. But this is an impermissible conflation of the objective falsity element with the subjective intent. *See Harra*, 985 F. 3d at 211–12. Furthermore, as clearly disclosed in the *statement itself*, this is an opinion as to where the stock might end up and nothing more. This is not an *assertion of fact* that can be falsifiable like what exist (ironically) in the examples given in many of the cases the Government cites. *See supra* footnote 4. Instead, this is the opinion of a private individual—a 39-year-old *day trader* who has actually disclosed to the world that he is a not a licensed financial advisor, and not a fiduciary. Mr. Matlock is simply one of millions of legitimate day traders who shares opinions, predictions, wins and losses with the fellow members of his trading community. His speculative

opinion is not false as a matter of law and therefore the Indictment's counts against him attempting to criminalize such opinions should be dismissed. *See United States v. Connolly*, 24 F.4th 821, 843 (2d Cir. 2022) (reversing wire fraud convictions and finding that government's presentation of statements of "opinion[s] not honestly held" were not sufficient to show falsity as required under statute).

It is worth further noting that the government completely disregards and omits the fact that Mr. Matlock actually ended up being correct about his prediction regarding TRCH, as several months later the stock price rose to $10. Furthermore, the fact that the stock rose as much over the near future belies the government's notion that Mr. Matlock's public statements ever negatively affected the stock price. Importantly, contrary to the assertions in the government's indictment, Mr. Matlock actually purchased additional shares of the stock *immediately after* he allegedly "dumped" the stock on February 16, 2021 a fact that *destroys the notion that there ever was a "pump and dump" to begin with*.[6] In spite of this, the government wants to use this prediction in the form of an opinion, correct or not, as evidence of a criminal action performed by Mr. Matlock, subject to up to 25 years in prison. This cannot stand and should be dismissed.

Next, in a breathtakingly broad reading of federal fraud statutes, the government takes the position that **even empirically true** statements can satisfy a false statement requirement. When attempting to characterize Matlock's statement that he "grabbed a few SXTC with you" as false, the government concedes that the statement in question is "*literally true* in that he had, in fact

---

[6] As discussed in Matlock's Motion, the Indictment's allegations regarding TRCH consist of only half-truths, as the government alleges that on February 16, 2021, Mr. Matlock had "dumped" his shares of TRCH by 14:01 EST, but omits the fact that as per the Government's own production, less than an hour later, Mr. Matlock traded back into TRCH and bought/sold the stock until 5:34 PM EST. The Indictment omits the fact that as per the government's own production, Mr. Matlock continued to trade in/out of TRCH on February 18–19, March 22, June 16, June 21, and June 25. These omissions are troubling, to put it lightly, and call into question what was actually presented to the Grand Jury in this case. In any event, the full record of Mr. Matlock's trading of TRCH—long available to the government—completely obliterates the government's contention that Mr. Matlock didn't believe his own statements or that he ever "dumped" the stock. *See* Motion at 18 n.12.

7

'grabbed a few SXTC' shares earlier…" Response at 14 (emphasis added). The government then goes on to argue (again) though that because his *subjective intent* could be perceived as fraudulent, the statement in question is therefore objectively false. Not only does this impermissibly conflate the elements of falsity, but it defies logic.

In other words, under the government's newfound theory of legal falsity, what is false is false, and what it literally true can *also be false.* A convenient interpretation for the prosecution, but it cannot be reconciled with the Fourteenth Amendment. The implications of subjecting individuals to criminal prosecution for making statements that are "literally true" (to use the prosecution's term), would have far reaching consequences. Nevertheless, that is exactly what the government is asking the Court to allow to happen. Fortunately, courts have long held to the principal logic that if a statement is true, it is by definition not false. *See Harra*, 985 F. 3d at 209 ("A statement is false if it is 'untrue.' And as a necessary corollary, a statement that is 'literally true ... is, by definition, not false.'") (quoting *United States v. Castro*, 704 F.3d 125, 139 (3d Cir. 2013)). This Court should apply these well-established constraints of logic and Due Process to the Indictment here.

**D. The Government Attempts to Criminalize a Statement Even When the Statement Was Made *After* Mr. Matlock Sold His Shares - t*he novel "Dump and Pump."***

The Indictment additionally alleges facts that are not prosecutable under § 1348 because Mr. Matlock could not have "gained money or property" as required by § 1348 by engaging in them. For example, regarding SXTC, the government states that Mr. Matlock was "already in the process of selling his shares" when he made an alleged false statement. Response at 14. If taken as true, that means that the government is saying that he "dumped" *before* he "pumped." A dump before a pump, however, renders the alleged scheme untenable. Even if "grabbed some SXTC"

8

was in an alternate universe somehow a false statement intended to increase the price of the stock, it is impossible for Mr. Matlock to obtain any money or property from making that statement, as required by the statute, because he sold the stock *before* the statement was allegedly made.

The same defect occurs for other stocks that Mr. Matlock is alleged to have sold contemporaneously with alleged "pump" statements. *See* Motion at 14–20 (analyzing Count 7 (GTT), Count 10 (SURF), and Count 11 (ALZN)). None of the counts relating to those stocks are tenable because Mr. Matlock did not realize or obtain money or property as a result of his statement.

### E. The Government Now Disavows the Need for False Statements Altogether

In what appears to be an acknowledgment that the statements that were the core of its case are not up to snuff, the government retreats to a confounding position: that it doesn't even need false statements. Indeed, in footnote 5 of its Response, the government makes this admission and claims "the Court could ignore the term 'false' altogether and still find the allegations in the Superseding Indictment should go to a jury." Response at 8 n.5.

However, without the alleged false statements (and the objective falsity thereof), the government cannot meet the elements required by § 1348. By the government's own pen, this case is and always has been a case about false statements. The government uses the word "false" or "falsely" *over 100 times* in the Indictment. One need not look past the very first paragraph of the Indictment to see the central role of false statements in the government's case. In describing the alleged scheme, the government breaks it down into three main steps: 1) the Defendants allegedly purchased stock; 2) they allegedly then posted ***false*** statements; and 3) they then secretly sold their shares. *See* Indictment ¶ 1. As is plainly obvious, without the false statements, there is no scheme whatsoever that would constitute a crime under § 1348 because steps one and three above alone

would not be unlawful. Asserting that false statements are not needed to prosecute *a case about false statements* defies logic and is a glaring admission that the central premise of falsity that the government relies upon is utterly hollow.

    F.    **The Government Attempt to Introduce an Expansive Standard for § 1348(1) That Renders § 1348(2) Superfluous**

The government attempts to mitigate the severe defects in showing false statements by distancing its case from subsection 2 of § 1348 and now urging that it alleges "a scheme to defraud" under subsection 1. Response at 1, 9. But this distinction does not remedy the fatal legal deficiency of the Indictment because, as a legal matter, even under subsection 1 of § 1348, a "scheme to defraud" must have "employed false material representations." *United States v. Baker*, 2017 WL 4853811, at *3 (W.D. Tex. Oct. 26 2017) (citing Fifth Circuit Pattern Jury Instruction 2.57).

By asserting that § 1348(1) applies and suffices here, the government takes the untenable position that § 1348(1) subsumes fact patterns under § 1348(2). This would render § 1348(2) superfluous and without meaning. This cannot be what Congress intended. To the contrary, Congress inserted the word "or" between the two subsections of § 1348, and basic canons of statutory construction dictate that the two subsections be read disjunctively as defining two types of prohibited conduct. The Supreme Court in *Loughrin v. United States* made this crystal clear in construing the bank fraud statute (18 U.S.C. § 1344) which has a parallel structure:

> To read the next clause, following the word "or," as somehow repeating that requirement, even while using different words, is to disregard what "or" customarily means. . . . that term's "ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings." . . . Yet Loughrin would have us construe the two entirely distinct statutory phrases that the word "or" joins as containing an identical element. And in doing so, his interpretation would make § 1344's second clause a mere subset of its first: If, that is, § 1344(2) implicitly required intent to defraud a bank, it would apply only to conduct already falling within § 1344(1). Loughrin's construction thus effectively reads "or" to mean "including"—a definition foreign to any dictionary we know of.

573 U.S. 351, 357 (2014) (citation omitted). The government's effort to interpret "or" as meaning "including" in § 1348 is erroneous under *Loughrin* and should be rejected.

### G. The Government Attempts to Create Falsity by Asking That a New Disclosure Requirement Be Judicially Created

The government also insists that (without citing to any case on point) that a "relevant duty [to disclose stock sales] arose when they [the Defendants] chose to post about and trade in stocks." Response at 31–34. That is, the government asks this Court to impose a new, judicially created disclosure requirement (to be followed under penalty of criminal prosecution): once an individual tweets about the future price of a stock or tweets that he bought that stock, he cannot sell it unless he has made some undefined disclosure, at some unspecified time, on some unidentified forum. At the outset, this is the province of Congress, not the courts, and imposing this never-before-seen disclosure duty on Mr. Matlock is a gross violation of his Due Process rights, as set forth in Section III of Mr. Matlock's Motion. [ECF No. 269 at 21–23]. What are the parameters for such a duty of disclosure? What needs to be said? To whom? And when? None of that is known to the government, and it is surely not known to Mr. Matlock. Prosecuting him for not disclosing is therefore unconstitutional. As the Supreme Court has explained, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 266 (1997). Furthermore, in spite of the government's insistence on many cases that involve fiduciaries, Mr. Matlock is not one. As discussed at length in Mitchell Hennessey's motion to dismiss, the government's attempt to actually compel and criminalize speech in these circumstances is prohibited by the First Amendment and cannot stand. *See* Hennessey's Motion to Dismiss [ECF No. 265] at 28–32.

## CONCLUSION

The government fails to allege objectively false statements in its indictment against Mr. Matlock. To remedy that defect, it asks that this Court bypass Congress and judicially expand the definition and criminality of what constitutes a false statement under the law. Furthermore, the government seeks to, without fair notice, impose new regulatory disclosure duties on an entire industry of non-fiduciary stock traders, compelling ordinary individuals to disclose their personal stock sales on a daily basis if need be.

A criminal prosecution that carries the threat of depriving a citizen of his freedom and imposing years of imprisonment is not an appropriate vehicle for the government to attempt an unprecedented expansion of securities fraud statutes and reinterpret the elements required when evaluating false statements. Due Process will not allow it and the bottom line is that the law as currently written does not support a criminal prosecution for the facts alleged in the indictment. Simply put, the government has failed to allege a crime against Mr. Matlock. Accordingly, Mr. Matlock respectfully requests that this Court issue an order dismissing the Indictment and all charges against him in whole.

Dated: June 22, 2023                                Respectfully submitted,

/s/
Luis A. Reyes
Texas Bar No. 90001831
Lreyes@ashcroftlawfirm.com
Tel: (512) 380-1700


Johnny Sutton
Texas Bar No. 19534250
Jsutton@ashcroftlawfirm.com
Tel: (512) 380-1700

ASHCROFT SUTTON REYES LLC
919 Congress Ave. Suite 1325
Austin, Texas 78701
Tel: (512) 547-7883

William Stradley
Texas Bar No. 19353100
STRADLEY LAW FIRM
1545 Heights Blvd
Houston, Texas 77008
Tel: (713) 224-5455

*Attorneys for Defendant
Perry Matlock*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2023, a true and correct copy of the foregoing document was served electronically on all counsel of record via the Court's CM/ECF.

/s/<br>
Luis A. Reyes