**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:22-cr-612** |
| | § | |
| **CONSTANTINESCU,** *et al.* | § | **The Honorable Andrew S. Hanen** |
| | § | |
| **Defendants.** | § | |

**United States' Motion to Exclude Expert Testimony**

## **Table of Contents**

I.    Relevant Background ................................................................................................ 1

II.    Legal Authority ...................................................................................................... 2

III.   Argument ................................................................................................................ 6

   A.   Aaron Hughes ......................................................................................................... 6

     1.   The Court should preclude Mr. Hughes' proffered testimony regarding stock market definitions because he is not an expert on this topic. ........................................ 7

     2.   The Court should preclude testimony involving references to others' activity on the internet or stock market. .................................................................................. 8

     3.   The Court should preclude testimony as to Defendant's opinions, knowledge, or mental states. .......................................................................................................... 9

     4.   The Court should preclude testimony about Defendants' attempts to disclaim liability or blame victims for their fraud. ......................................................................... 11

     5.   The Court should preclude proffered testimony about follower counts or market causation. ............................................................................................................ 12

     6.   The Court should preclude cumulative factual testimony. ............................... 13

   B.   Colin P. Marks ...................................................................................................... 14

     1.   The Court should preclude testimony on "Disclosure Requirements and Other Rules Governing Market Participants." ....................................................................... 14

     2.   The Court should preclude testimony regarding the legalities of day trading. ............... 15

     3.   The Court should preclude testimony attempting to blame victims and disclaim liability for fraud. .................................................................................................. 16

     4.   The Court should preclude testimony about "Traditional Market Manipulation versus Actions in Question in This Matter." ........................................................... 17

     5.   The Court should preclude testimony about "Publicly Available Trade News and its Effect on Stocks." .......................................................................................... 18

     6.   The Court should preclude testimony about "Causation and Analysis of FINRA records so far received." ...................................................................................... 18

     7.   The Court should preclude testimony about "The COVID Market of 2020 and 2021."  19

   C.   Andrew Auslander .............................................................................................. 19

   D.   Matthew Evans. .................................................................................................... 22

The United States respectfully moves to exclude expected testimony of four proposed defense experts: Aaron Hughes, Colin P. Marks, Andrew Auslander, and Matthew Evans. At a minimum, the United States requests that the Court order Defendants to cure their defective disclosures.

## I.     Relevant Background

On April 27, 2023, the Court entered a scheduling order that required the United States to provide its disclosures by June 15, 2023, and for Defendants to provide their disclosures by August 15, 2023. (ECF No. 254.) The Court explained that the disclosures:

> [S]hall include [the witness's] name and current position, a written summary that includes each and every opinion of the expert and reasons therefore. It should also include the expert's resume, a list of the expert's publications, if any, a list of all documents or categories of documents reviewed, a list of all cases in which they have testified (whether by deposition or live at trial) that deal in any way with individuals investing the stock market or speaking or publishing statements about the stock market or individual stocks and the facts surrounding any compensation or agreement to compensate the expert for his or her work in this case.

(*Id.* at 1 n.2.) On June 15, 2023, the United States provided its summary/expert disclosures to the defense.

On August 15, 2023, Defendants made several disclosures. Defendant Matlock provided a disclosure of Professor Colin P. Marks with numerous deficiencies that failed to meet the Court's articulated standard, which the United States asked Defendant to cure. Defendant produced an amended disclosure on September 5, 2023, and another amended disclosure on January 31, 2024. (*See* Ex. 2.) Defendant Matlock's disclosure for Professor Marks remains deficient and objectionable, as described below.

Defendant Rybarczyk provided disclosures for Andrew Auslander and Matthew Evans in August 2023. Mr. Auslander's disclosure provided only a list of potential topics about which he

"may" testify, but did not included the required substantiative opinions or the reasons therefor. The United States requested Defendant supplement the disclosure to provide the required information. Defendant supplemented the disclosure, but it remains deficient and objectionable. (*See* Ex. 3.)

Similarly with Mr. Evans, Defendant provided a deficient disclosure that failed to present the complete list of the stocks Mr. Evans analyzed, the time frame of those analyses, any opinions related to those analysis with summaries of the expected testimony, and the reasons and bases therefore. (*See* Ex. 4.) Defendant has produced additional charts, but has not included an updated disclosure or any opinions or reasons therefore about which he can testify.

On January 31, 2024, Defendants Deel, Cooperman, and Matlock disclosed the report of Aaron Hughes, a purported expert "in the field of data forensics." (Ex. 1.) Despite claiming that "[m]y Curriculum Vitae is attached to this report," it was not. (*See id.*) The disclosure is rife with similar deficiencies discussed below.

## II.    Legal Authority

Expert testimony is governed by Federal Rule of Evidence 702. Rule 702 permits a witness to testify as an expert if:

- the expert has "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue;"

- "the testimony is based on sufficient facts or data;"

- "the testimony is the product of reliable principles and methods;" and

- "the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702(a)–(d); *see also United States v. Truitt*, 938 F.3d 885, 889 (7th Cir. 2019) (citing *Daubert v. Merrell Dow Pharma, Inc.*, 509 U.S. 579, 592 (1993)).

As this Court is aware, "[t]his rule exists to 'protect juries from unreliable and irrelevant expert testimony.'" *Ideus v. Deere & Co.*, 2:22-cv-00132, 2023 WL 4154936, at *5 (S.D. Tex. Apr. 18, 2023) (Hanen, J.) (quoting *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022)). Indeed, "[i]t is the gatekeeping responsibility of the trial judge to ensure that any admitted [expert] testimony or evidence is both relevant and reliable." *United States v. John*, 597 F.3d 263, 274 (5th Cir. 2010); *SIS, LLC v. Orion Group Hld., Inc.*, 4:22-cr-891, 2023 WL 9284098, at *1 (S.D. Tex. Dec. 21, 2023) (Hanen, J.) ("Under *Daubert*, trial courts must exercise a gatekeeping function . . . ."). "The [Supreme] Court [has] emphasized that a district court, while acting as a gatekeeper for expert evidence, must evaluate whether there is an adequate 'fit' between the data and the opinion proffered." *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 145 (1997)).

To provide the Court with the information necessary to exercise its gatekeeping function, as well as to give the United States fair notice, Rule 16 requires defense expert disclosures to include:

- "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;"

- "the bases and reasons for them;"

- "the witness's qualifications, including a list of all publications authored in the previous 10 years;" and

- "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition."

Fed. R. Crim. P. 16(b)(1)(iii). The disclosure requirements are "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused

cross-examination." Fed. R. Crim. P. 16, advisory committee's note to 1993 amend.; *United States v. Ulbricht*, 858 F.3d 71, 114 (2d Cir. 2017).

"[W]hen expert testimony is offered, the proponent . . . has the burden to demonstrate by a preponderance of the evidence that the expert is qualified, that the evidence is relevant to the lawsuit, and that the evidence is reliable." *Ideus*, 2023 WL 4154936, at *12 (Hanen, J.). An expert who fails to satisfy the requirements of Rules 16 and 702 can be excluded from testifying. For example, if a witness has specialized expertise, but it is not related to the specific facts of the case, it "is all but dispositive" that he should not be permitted to testify. *Truitt*, 938 F.3d at 889–90 (explaining that the court "must look at each of the conclusions [an expert] draws individually to see if he has the adequate education, skill, and training to reach them." (internal quotations and citation omitted)). Similarly, "[i]f a party fails to comply with Rule 16, the district court has 'broad discretion in fashioning a remedy,' which may include granting a continuance or 'ordering the exclusion of evidence.'" *Ulbricht*, 858 F.3d at 115 (finding "[t]he district court did not abuse its discretion in precluding the defense from calling its proposed experts" where "[n]ot only were the disclosures later, more importantly, they were plainly inadequate).

When a proposed expert offers an opinion relying solely or primarily on experience, Rule 702 requires that the witness "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note. The "trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* (citing *Daubert*, 43 F.3d at 1319); *see also United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (*en banc*) (excluding expert in insider trading case). As the Supreme Court has stated, a district court need not "admit

opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

When considering whether to allow expert testimony, the court should separately scrutinize each of the expert's opinions under each requirement of Rule 702. Each of "the conclusions he draws individually" must be based on the expert's "adequate education, skill, and training . . . ." *Truitt*, 938 F.3d at 890 (internal quotations and citation omitted). And for each opinion, the expert must demonstrate the "'link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support.'" *United States v. Evans*, 892 F. Supp. 2d 949, 956 (N.D. Ill. 2012) (quoting *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003)) (allowing expert on how cellular networks operate but not permitting testimony on theory based only on expert's training and experience). Where these requirements are not satisfied, a court should not permit the expert's testimony.

Finally, as this Court knows, "[a]n expert opinion is limited to questions of fact . . . and may not render conclusions of law." *Orion Group*, 2023 WL 9284098, at *1 (Hanen, J.). An expert cannot offer "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged" because "[t]hose matters are for the trier of fact alone." Fed. R. Evid. 704(b); *see also Truitt*, 938 F.3d at 887 (affirming exclusion of expert's proposed testimony that defendant lacked required *mens rea* for crime); *United States v. Brown*, 871 F.3d 532, 539 (7th Cir. 2017) (affirming exclusion of proposed expert testimony that would "merely tell the jury what result to reach" (internal quotations and citation omitted)).

### III.    Argument

#### A.  Aaron Hughes

Defendants Deel, Cooperman, and Matlock disclosed Mr. Hughes as the president of a firm that "performs computer security and forensics services," and an expert "in the field of data forensics." (Ex. 1 at 1.) This basis is insufficient for Mr. Hughes' proffered testimony.

First, the Court should not allow Mr. Hughes to testify because Defendants failed to satisfy the disclosure requirements of Rule 16. Although his report states "My Curriculum Vitae is attached to this report," it was not. (*See* Ex. 1.) Similarly, the report states that he has "been engaged in many cases litigated before various courts as a consulting expert, as well as a testifying expert," but discloses none of those cases. (*See* Ex. at 1.) This is indisputably insufficient. *See* Fed. R. Crim. P. 16(b)(1)(iii); (ECF No. 254).

Mr. Hughes' stated qualification as an expert in the "field of data forensics" is also plainly insufficient for the proffered testimony. This tells us almost nothing about his qualifications, or the bases and reasons for his proffered testimony and opinions. At best, this tells us that he's an expert at looking closely at "data." It doesn't tell us anything about the kinds of data, the methods employed either in his experience or this case, and simply cannot support a finding that Mr. Hughes' proffered testimony is reliable. Defendants have failed to meet their burden, and thus, the Court should exclude Mr. Hughes's testimony.

In the event the Court allows Mr. Hughes to testify notwithstanding Defendants' facially insufficient disclosure, the United States moves to exclude essentially the entirety of his testimony because it is permeated by material that is objectionable on a host of grounds including relevance, hearsay, and the fact that Mr. Hughes has no established basis to provide the proffered testimony. Specifically, the Court should exclude the following categories of testimony from Mr. Hughes:

1. Definitions of stock market terms;

2. Testimony about others' activity on the internet or stock market;

3. Testimony about Defendants' opinions, knowledge, or mental states;

4. Defendants' attempts to disclaim liability or blame victims for their fraud;

5. Testimony about the success of the scheme or that confuses the materiality standard and issues, such as follower counts and market causation; and

6. Cumulative factual testimony.

The Court should exclude this testimony for numerous reasons discussed below and in the United States' motions *in limine*.[1] (ECF No. 538, "US MILs".)

### 1. The Court should preclude Mr. Hughes' proffered testimony regarding stock market definitions because he is not an expert on this topic.

Defendants' notice includes information suggesting Mr. Hughes will testify to certain definitions of terms regarding stock market trading, such as what constitutes "swing" trading or a "pump and dump" or what a "meme stock" is. (*See* Ex. 1 at 1–2, 21.) Mr. Hughes' proffered expertise in "data forensics" is facially insufficient to support his testimony about topics regarding stock trading, let alone defining specific terms involved in that trading. Indeed, his report cites to public websites as to the only basis for that proffered testimony. (*See* Ex. 1 at 1–2.) That is plainly insufficient. Mr. Hughes' testimony on such topics has no legitimate basis and should be excluded.

---

[1] Much of the proffered testimony is objectionable for grounds laid out in the United States' motions *in limine*, which the United States incorporates here. The Court should exclude testimony covered by those motions for the reasons articulated there. For economy, the United States does not re-plough the same ground on those issues here to the same extent they were discussed in those motions.

### 2. The Court should preclude testimony involving references to others' activity on the internet or stock market.

Mr. Hughes' proposed to testify to the fact that: "[e]vidence of references to due diligence exist – either through reviewing general internet press releases, financial websites, tweets and messages to un-indicted people that were discussing the same thing, or direct tweets and messages from the defendants themselves." (Ex. 1 at 2.) He hopes to say things like "[b]ased on recent news regarding a TRCH merger there was plenty of speculation that TRCH would rise." (Ex. 1 at 8.) Such testimony is objectionable on numerous bases laid out in the United States' motions *in limine* including its irrelevance[2] and the fact that it constitutes inadmissible hearsay. What others were discussing on social media or the internet has no bearing on the issues before the jury: whether Defendants' made false representations with the intent to defraud. (*See* US MILs sections II.6, II.13.) Furthermore, Mr. Hughes' stated qualifications as an expert in data forensics do not support his ability to make statements about stock mergers or similar information, like a purported merger of companies Defendants touted "was seen as positive news, and there were even rumors of a Tesla connection . . . ." (Ex. 1 at 9.).  At bottom, it appears from Defendants' disclosure of Mr. Hughes that they seek to use him solely as an impermissible mouthpiece to launder in irrelevant hearsay.

As another example, Mr. Hughes purports to testify that "[t]here were several articles about SURF during this timeframe, including articles on Yahoo Finance, The Motley Fool, and Nasdaq.com." (Ex. 1 at 12.) Mr. Hughes then hopes to say, "[t]he general consensus was:" and then offer quotes from the articles. (Ex. at 12.) Obviously, this is inadmissible hearsay and, even if it were admissible, Mr. Hughes' disclosure offers no basis under which he should be allowed to so testify. This is so far removed from admissible testimony, and such testimony permeates

---

[2] Where the United States objects on grounds of relevance throughout this brief, it also objects on the basis of Rule 403.

Mr. Hughes' disclosure, that it is difficult to specifically address it all on every basis of objection. (*See, e.g.*, Ex. 1 at 15–16 (attempting to introduce inadmissible hearsay quotes from online articles).) But all such testimony should be precluded.

Similarly, Defendants' tweets, direct messages, and other communications that the United States is not introducing are inadmissible, self-serving hearsay. (US MILs section II.6.) The Court should not permit this attempt to smuggle inadmissible hearsay through an "expert" witness. Any such testimony should be excluded.

### 3. The Court should preclude testimony as to Defendant's opinions, knowledge, or mental states.

Mr. Hughes attempts to testify as to what Defendants' own opinions were, which is a plainly inappropriate attempt to admit a Defendants' otherwise inadmissible opinion without the Defendant having to testify. To the extent Defendants want to introduce evidence as to their opinions, they can testify and be subject to cross-examination. If they chose not to, the Court should bar the testimony of their unqualified mouthpiece. *See, e.g.*, *United States v. Beavers*, 756 F.3d 1044, 1051 (7th Cir. 2014) ("[T]he general rule against hearsay . . . would typically prevent a defendant from calling a friend to the stand to relay an exculpatory statement the defendant said to her, in lieu of the defendant testifying himself."); *see also Taylor v. Ill.*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is . . . inadmissible under standard rules of evidence."); *Truitt*, 938 F.3d at 887.

For example, Mr. Hughes purports to explain a tweet by Defendant Matlock that said "Added WWR… It runs with CBAT every time." (Ex. 1 at 4.) Mr. Hughes hopes to offer testimony that "Mr. Matlock is stating his opinion based on the fact that WWR (Westwater Resources) is a complimentary company that mines and purifies graphite materials – a key component in batter construction." (*Id.*) This is obviously excludable on numerous grounds including that it is utterly

speculative, unsupported by Mr. Hughes' stated qualification, and is an impermissible attempt to smuggle in Defendant Matlock's supposed meaning without Defendant Matlock taking the stand. Mr. Hughes cannot legitimately testify to the opinion of Defendant Matlock or any other Defendant.

This theme repeats through Mr. Hughes' proffered testimony. (*See* Ex. 1 at 8 ("Mr. Deel has an opinion that TRCH will hit 5"; at 18 ("Again, Mr. Deel expresses his opinion based on information that was being disseminated at the time."); at 22 "[Mr. Deel's] statement 'the EZFL news is good' is referring to the announcement of EZ Fill Holdings regarding the additional delivery capacity they had added . . . ."); at 22 ("Mr. Cooperman references 'good news' for EZFL and is clearly aware of the announcement that had occurred that very day.")). For example, Mr. Hughes hopes to testify to the following:

> [Defendant Cooperman's] two statements made by Twitter, and then Discord, are opinion. It was also the opinion of a lot of folks at the time. $NAKD was a meme stock and was "viral," just like cat memes, or other memes from the like of Reddit, and other social sites. He expressed an opinion that was being expressed by the internet-at-large before and after he did.

(Ex. 1 at 20.) The inadmissibility of such testimony is plain on its face. There simply is no basis under which the Court should allow this or similar testimony.

Similarly, general statements about Defendants' knowledge or awareness should be precluded. For example, without explaining the basis for the claims, Mr. Hughes purports to testify about press releases posted on NASDAQ.com and state, "Mr. Deel and Mr. Matlock were very aware of this information, and there was a lot of chatter on Twitter about it." (Ex. 1 at 9.) Such testimony should be precluded as hearsay and claims without disclosed basis, among other grounds. Mr. Hughes simply cannot substitute Defendants' mental states for his own and parrot

their self-serving theory of the case based on dubious foundation. The law does not allow such an

end run around the hearsay Rules. (US MILs section II.6.)

### 4. The Court should preclude testimony about Defendants' attempts to disclaim liability or blame victims for their fraud.

Mr. Hughes purports to testify about:

> Mr. Matlock . . . encouraging people to develop and trade their own plan. The 'this is my plan,' 'do your own research,' and 'trade your own plan' theme is a recurring one for each of Mr. Deel, Mr. Matlock, and Mr. Cooperman . . . .

(Ex. 1 at 6.) Mr. Hughes hopes to explain that Defendants "all made multiple attempts to encourage

people to do their own research," and told followers, "'Wipe your own ass, I'll wipe mine.'" (Ex.

1 at 24.)

The Court should preclude such testimony for the reasons laid out in the United States'

motions *in limine*. (US MILs section II.4.) The law does not allow Defendants to blame victims

for their fraud or try to disclaim liability. Such testimony also attempt to launder in Defendants

inadmissible hearsay statements through the guise of general recurring "theme[s]" or introduce

specific inadmissible hearsay. (*See, e.g.*, Ex. 1 at 9 ("Mr. Matlock had an interaction with another

user where he reinforces that he can't 'trade FOR YOU' to Twitter user '@KyleHeman'."). This

line of testimony has no basis in law (let alone in Mr. Hughes' disclosed qualifications), and the

Court should not allow it.

Similarly, the Court should preclude Mr. Hughes' attempts to offer Defendants' attempts

to disclaim away their fraud for the reasons set for in the United States' motions *in limine*. (*See*

US MIL II.7.)

### 5.   The Court should preclude proffered testimony about follower counts or market causation.

Mr. Hughes purports to introduce the number of follower counts of Defendants over time. The proffered testimony is objectionable on numerous bases. First, Mr. Hughes' disclosure is plainly insufficient to support his "expertise" to provide such testimony. Further, the testimony as it is unreliable and irrelevant.

As to reliability, Mr. Hughs explains only that he used a website called "SocialBlade.com . . . that provides follower tracking, as well as other metrics across different social media sites." (Ex. 1 at 3.) He explains that "[i]t is generally recognized as being accurate for follower counts, including follower trends and 'drop-offs.'" (*Id.*) But Mr. Hughes' disclosure does not provide sufficient information to assess his own qualifications, let alone how those qualifications would support his assessment of this website, the results of which are also hearsay. And beyond his unsupported assessment, there is nothing to support the reliability of the website itself or the data he gathered from it. Defendants have not met their burden of demonstrating the reliability of this testimony, and it should be excluded.

It should further be excluded because it is not legally relevant. The success of the scheme itself is irrelevant. *See United States v. Greenlaw*, 48 F.4th 325, 340 (5th Cir. 2023)  (US MILs section II.8, II.9.) Thus, whether it is directed at 5,000 or 125,000 intended victims is similarly irrelevant. The scheme didn't have to reach a single victim (*i.e.*, be successful) for criminal liability to attach. *See Greenlaw*, 48 F.4th at 340. The Court should exclude such testimony on this basis. This applies to similar testimony about "the reach of the tweets." (Ex. 1 at 3–4.) Whether a tweet reached one victim or 100 victims, or was retweeted once or ten times, has no legal relevance and should excluded.

Rather, materiality asks whether Defendants' fraudulent statements could have influenced their intended audience's, *i.e.* Defendants' social media follower's, decisions to trade. (US MILs section II.A.) The Court will hear directly from victim-witnesses that Defendants' fraudulent statements could (and, in fact, did) influence their decision to trade. Tangential and irrelevant evidence aimed a different materiality standard is not probative of relevant issues and is substantially more confusing than probative of any fact the jury will be tasked with determining.

For similar reasons, the Court should bar testimony aimed at the topic that "[t]he government provides no hard data supporting, or showing, their charges of influence on the market." (Ex. 1 at 26.) Apart from ignoring the actual record the United States will introduce at trial, such statements are irrelevant for the reasons discussed in the United States' motions *in limine* and should be precluded. (*See* US MILs section II.9.)

### 6. The Court should preclude cumulative factual testimony.

The balance of Mr. Hughes' proffered testimony appears to be the recitation of numerous facts that will already be in evidence from the United States case-in-chief. For example, the fact that Mr. Matlock had purchased certain numbers of shares in and around his alleged false statements. (Ex. 1 at 3–4.) Such evidence will already have been introduced by the United States' case-in-chief, and Defendants will have had the opportunity to cross-examine the sponsoring witnesses. Indeed, as a basis of support for his testimony, Mr. Hughes admits that the United States' summary witness, "Ms. Garibotti's own numbers reflect this." (Ex. 1 at 4.) He repeats, *ad nauseum*, that "Ms. Garibotti's own data show this," and the information about which he hopes to testify is from the United States' own trial exhibits. (Ex. 1 at 7.)

There is simply no need for Defendants to trot out an expert to rehash the same points that are demonstrable in the United States' own exhibits to be presented by witnesses. Mr. Hughes is

not suggesting those facts are incorrect. Thus, such testimony is cumulative, and the Court should

not permit Defendants to waste the jury's time with it. *See* Fed. R. Evid. 403.

Mr. Hughes' testimony is also insufficient to establish a basis for him to discuss or offer

opinions on the stock trading at issue. Further, to the extent Mr. Hughes hopes to also offer legal

conclusions from these facts, of course, that, too, should be precluded. *Orion Group*, 2023 WL

9284098, at *1.

### B. Colin P. Marks

Defendant Matlock noticed Professor Colin Marks as an expert in "securities related topics,

including all securities regulations, securities-related criminal statuses that govern the conduct of

market participants, those with different trading approaches, and 'day-trading.'" The proffered

bases for that testimony are Professor Marks' position as the Earnest W. Clemens Professor of

Corporate and Securities Law at St. Mary's University School of Law, and his "extensive research,

skills, knowledge, experience, education and legal training, not the least of which includes rigorous

review of all legal developments in the arena of securities related laws." (Ex. 2 at 1–2.) Only

counsel for Defendant signed the disclosure, not Professor Marks, which is insufficient.

Despite Professor Marks' qualifications, none of the substance of his proffered testimony

is admissible in this case, because it is all on inadmissible topics addressed in the United States'

motions *in limine*. The Court should exclude Professor Marks' proffered testimony.

#### 1. The Court should preclude testimony on "Disclosure Requirements and Other Rules Governing Market Participants."

Professor Marks proposes to testify "as to regulations that govern those who engage in

securities related transactions" and "explain that there are no applicable securities regulations that

would require individuals like Defendant Matlock, or any of the Defendants, to disclose the sale

of their stocks." (Ex. 2 at 2.) All such testimony is inadmissible on numerous grounds, including that it involves legal conclusions and is irrelevant.

First, the law is clear that expert "opinion is confined to questions of fact, as 'an expert may *never* render conclusions of law.'" *Reitz v. Woods*, 85 F.4th 780, 788 (5th Cir. 2023) (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009); *Orion Group*, 2023 WL 9284098, at *1. The only statutes at issue for trial are 18 U.S.C. §§ 1348, 1349, & 2, and the Court, not a witness, will instruct the jury as to those statutes.

Second, as this Court has also already recognized, such testimony is irrelevant. The Court easily dismissed Defendants' arguments that they are not covered by other securities laws or regulations other than the charged statutes and so cannot be culpable, finding such argument is "the least meritorious" advanced by Defendants. (Order, ECF No. 385, at 4; *see* US MILs section II.21.) The Court similarly dismissed Defendants' arguments that they have no independent duty to disclose their stock transactions, writing: "Once the Defendants opted to publicly speak, they had a duty to be honest and not to defraud. . . . The duty not to defraud is imposed by 18 U.S.C. §§ 1348–1349 and the duty to be honest was self-imposed on the Defendants by the Defendants when they chose to engage in discourse pertaining to various stock transactions." (Order, at 3.) Because the Court has already recognized such argument is irrelevant to this case, the Court should preclude all related evidence and testimony.

### 2. The Court should preclude testimony regarding the legalities of day trading.

Professor Marks proposes to "explain what 'day trading' is, the legalities behind it . . . . [and] will further testify to the fact that Day Trading is a perfectly legal profession, duly recognized by the United States Government." (Ex. 2 at 2.) Professor Marks also hopes to testify "Mr. Matlock's trading activity is consistent with this approach" and that "multiple dozens of

15

transactions in a single day on even just one stock is not uncommon for day traders and not unlawful activity." (Ex. 2 at 2.)

The Court should exclude all such testimony because it attempts to testify to legal conclusions, which the law clearly forbids. *See Orion Group*, 2023 WL 9284098, at *1. The balance of this testimony is speculation about what "day traders" do and don't do, and has no relevance to the Defendant's conduct. (Ex. 2 at 2.) This case is about Defendants' conduct, and whether it was fraudulent, not whether it was consistent or inconsistent with others' trading practices. The Court should exclude such testimony attempting to backdoor in legal conclusions by suggesting Defendants' trading is "consistent with" those practices. *Id.*

### 3. The Court should preclude testimony attempting to blame victims and disclaim liability for fraud.

Professor Marks hopes to testify to "several social media posts (video and written) made by Mr. Matlock in which he specifically admonished all to 'trade their own plan' (and like statements) and do their own research and due diligence before participating in the stock market." Such testimony is objectionable because it seeks to admit inadmissible hearsay and is irrelevant.

As described in the United States' motions *in limine*, the Court should preclude any efforts to blame victims for failing to uncover or avoid Defendants' fraud, because it is legally irrelevant. (US MIL section II.4.) "The victim's negligence is not a defense to criminal conduct." *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980).

Efforts to disclaim away fraud are similarly legally irrelevant. (*See* US MIL section II.7.) "Fraudsters may not escape criminal liability for lies told to induce gullible victims to make worthless investments by inducing them to sign a contract containing disclaimers of reliance." *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017); *United States v. Lucas*, 516 F.3d 316, 339, n.89 (5th Cir. 2008) ("We are not persuaded that the disclaimer provision of these individual

sales contracts insulates Defendants from the federal [fraud] charges . . . . Defendants do not cite to any case law for this proposition.").

Such statements are also Defendants' own self-serving inadmissible hearsay to which an exception does not apply. (*See* US MIL section II.6.) Thus, the Court should preclude all such testimony.

### 4.   The Court should preclude testimony about "Traditional Market Manipulation versus Actions in Question in This Matter."

Professor Marks again attempts to testify to his legal conclusions that:

> typical cases of alleged market manipulations involve cases where individuals, who often have or pretend to have *insider* knowledge, are making empirically false statements about a *company*, and it is this type of false information about companies from purported insiders that have an effect of falsely inflating values of stocks. He may testify that he has never seen a case like this (in fact it may be the first of its kind) in which a non-insider defendant is being prosecuted for making statements of opinions or hope, based on publicly available information and good faith analysis, or being prosecuted for statements from which he could not benefit because he was not actively trading the stock in question. He may testify that the spreading of already existing information is not only not prohibited, but it is indeed essential for the markets to function properly in determining value. He will also testify as to the difference between the sharing of economic information and taking actions that actually deprive another of their property, the latter being what the fraud statues were designed to prevent.

(Ex. 2 at 3.) This is obviously impermissible testimony the Court should not allow.

The testimony attempts to assert impermissible legal conclusions, *see Orion Group*, 2023 WL 9284098, at *1, improperly argue the novelty of the charges, (*see* US MILs section II.14), inappropriately argue about prosecutorial decisions (*see* US MILs section, II.12), and is completely irrelevant to the questions before the jury, *i.e.*, whether Defendants' conduct violated the charged statutes. And Professor Marks obviously cannot testify to Defendants' "hope," "good faith," or what their "opinions" were "based on." (*See* Ex. 2 at 3.) The Court should preclude this testimony.

### 5. The Court should preclude testimony about "Publicly Available Trade News and its Effect on Stocks."

Professor Marks hopes to:

> provide observations of impactful news that may have impacted the markets during the relevant time periods in this case. These observations will extend to how certain news could have affected particular stocks charged in the indictment. In summary, he will provide testimony that at the time that Defendant Matlock and others made public statements about *those* stocks, there already existed positive public information about that stock, and others in the market had already posted positive information about those same stocks.

(Ex. 2 at 4.)

This testimony is objectionable for a host of reasons including that it is speculation, seeks to introduce inadmissible hearsay, and is irrelevant for many of the reasons laid out in the United States' motions *in limine* including as to the irrelevance of other sources of market impact and information untethered to Defendants' conduct. (*See* US MILs sections II.6, II.9.) The Court should exclude such testimony.

### 6. The Court should preclude testimony about "Causation and Analysis of FINRA records so far received."

Professor Marks hopes to testify that "there is no evidence that determines actual causality between any statements or behavior made by Mr. Matlock and the behavior of the stock market." (Ex. 2 at 4.) Such testimony is irrelevant, as explained in the United States' motions *in limine*. (*See* US MILs section II.9.) The Court should preclude the testimony.

Professor Marks also hopes to testify about "FINRA investigations performed on the relevant stocks during the relevant times." (Ex. 2 at 4.) Such testimony is irrelevant, as explained in the United States' motions *in limine*. (*See* US MILs section II.5.) It is also unfairly prejudicial. (*See id.*) The Court should preclude the testimony to avoid mini-trials within the trial about the investigations and conclusions of civil regulatory bodies. Should the defense be allowed to explore

these topics in evidence, argument, or questioning, the United States must be allowed to respond to present the full record. (*See* US MIL sections II.5, II.10.) The Court should avoid these side shows.

### 7. The Court should preclude testimony about "The COVID Market of 2020 and 2021."

Professor Marks hopes to testify about his "observations of the stock market during 2020, 2021, and after, and the apparent effects of the global pandemic and the attendant lock – down and stimulus in the United States. He may testify to his observations regarding the influx of volume into the markets during this time and the remarkable rise in markets overall." (Ex. 2 at 4.) This case is not about a historical tour of COVID and its downstream effects. The Court should preclude this testimony for numerous reasons including irrelevance, waste of time, and the fact that it is untethered to the issues before the jury: the Defendants' charged conduct.

### C. Andrew Auslander

Defendant Rybarczyk noticed Andrew G. Auslander to "provide summary testimony regarding the rules practices and industry standards relevant to institutional and retail trading." (Ex. 3 at JRYBARCZYK-004526.) Mr. Auslander's proposed testimony flies directly in the face of the Court's Order dismissing arguments about other securities laws and regulations not applying to Defendants as "the least meritorious" they advanced. (*Compare* Ex. 3 *with* Order, ECF No. 385.) For reasons already discussed herein and in the United States' Motions *in Limine*, the Court should preclude Mr. Auslander from testifying. (U.S. MILs section II.21.)

For example, Mr. Auslander proposes to testify to the irrelevant topics that Defendant Rybarczyk "was not registered, was not licensed, . . . was not holding out his opinion is financial advice. . . . had no duties to followers . . . and no other traders could reasonably rely on Mr. Rybarczyk's social media messages." (Ex. 3 at -4528.) Such testimony is objectionable on

19

numerous grounds already articulated including that it is irrelevant, the Court has already rejected much of it, and it misstates the applicable materiality standard. (*See* US MILs, sections II.4, II.9, II.21.)  It is the Court's job to tell the jury what the relevant law is, not Mr. Auslander's.

Similarly, testimony about "rule, practices, strategies, and industry standards for institutional traders, retail traders, and/or day traders," "SEC and FINRA [regulations,] registrations and licensures relevant to securities, equities, and/or commodities trading and relevant to providing financial advice to others" are all topics on which Mr. Auslander proposes to testify that the Court has already rejected as irrelevant. (*See* Order, ECF No. 385; US MILs section II.21.) They also advance numerous legal conclusions that are similarly impermissible. *Orion Group*, 2023 WL 9284098, at *1.

He also purports to testify to numerous additional impermissible legal conclusions including:

- "it is not improper or illegal for retail traders to use social media to publicize or tout stock ideas, and to coordinate trading with others"

- "Trading practices that may be perceived as unfair but that are permissible under the applicable laws, regulations, and industry standards"

- "institutional and retail traders can—and do—legally engage in scalping, high-frequency trading with algorithms, trading on insider information that was legal obtained . . . "

(Ex. 3 at -4526–27.) These and similar topics are irrelevant and objectionable on multiple bases including that the Court has already rejected many of them, they concern others irrelevant to this case, and state multiple legal conclusions. *Orion Group*, 2023 WL 9284098, at *1; (Order, ECF No. 385; US MILs sections II.13, II.21.)

He also proposes to testify about numerous other topics that have no application in this case and should not come before the jury including "institutional traders and investment banks,"

"activities [that] provide institutional traders with potential advantages over retail investors," and that "investment banks often bluff or engage in puffery about their positions." (Ex. 3 at -4527–29.) Such testimony is obviously irrelevant to this case and should be excluded. The speculative wrongdoing of others has no place in this trial. (US MILs section II.13.)

Mr. Auslander also proposes to testify to topics that amount to victim blaming (*e.g.* "traders should not have relied on Mr. Rybarczyk's social media messages,"), attempts to disclaim the fraud, and efforts to continue to confuse the jury as to the applicable materiality standard. (*See, e.g.*, Ex. 3 at -4527.) Such testimony is objectionable on numerous grounds already laid out, including that it is irrelevant, has no basis in law, is inadmissible hearsay, and the Court should preclude it. (*See* US MILs sections II.4, II.6, II.7.)

Mr. Auslander also purports to testify to numerous topics irrelevant to materiality or that concern the success of the scheme, which, as described in the United States Motions *in limine* is legally irrelevant. (Ex. 3 at -4528.) For example, Mr. Auslander hopes to testify about "[t]he profitability, costs, or other market effects of statements that one is buying, selling, or holding a particular security at a particular time," including that "[p]ublic statements that a person just sold, is about to sell, or will sell his shares of a stock would either: (a) not affect the market at all; or (b) cause the stock price to decrease." (*Id.*) Similarly, he hopes to testify that "[i]f Mr. Rybarczyk had publicly tweeted when he sold, the only effect, if any, would be to drive the price down, make short sellers money, and cause harm to those hoping the price will increase." (*Id.*) Such testimony is irrelevant for all the reasons already discussed, speculative, and an attempt to substitute Mr. Auslander for Mr. Rybarczyk's self-serving statements, which is impermissible.

Frankly, it is difficult to comprehensively object to each piece of Mr. Auslander's proposed testimony because almost every clause of his disclosure is objectionable on multiple grounds.

Stripped of all this improper testimony, there is little left for Mr. Auslander to offer that is relevant to the issues in this case. Whatever slight probative value any of his proposed topics may have, they are substantially outweighed by the waste of time and confusion of the issues his testimony would encourage. The Court should preclude Mr. Auslander from testifying. *See* Fed. R. Evid. 403.

### D.  Matthew Evans.

Defendant Rybarczyk noticed Matthew Evans to offer testimony about his "examinat[ion] and analy[sis] of various stock price movements, high frequency trading data, twitter, and discord communications associated with multiple stocks listed in the Superseding Indictment, including, but not limited to, all the stocks listed in the substantive counts in the Superseding Indictment concerning Mr. Rybarczyk." (Ex. 4 at JRYBARCZYK-004396–97.) However, his disclosure does not contain any stated opinions as to those analyses, the reasons therefore, or identify with any specificity which opinions that are expressed pertain to which specific stocks or trading episodes. Defendants' produced draft charts for certain stocks but does not connect those charts to any opinions or bases in the disclosure. Such disclosure is woefully insufficient. Mr. Evans should be precluded from testifying about any analysis or opinion not contained in his disclosure, including attempting to tie any opinions stated in the disclosure to any particular stock, because he has not so disclosed opinions specific to any stock analysis he performed. (*See generally id.*)

Mr. Evans proposes to testify to various definitions concerning stock trading. Within many of those proposed definitions, Mr. Evans proposes to testify to legal conclusions, such as that "scalping" "is sometimes used as a term to describe a perfectly legal day trading style." (*Id.* at -4398.) He then hopes to testify that "Defendant's trading style . . . [is] consistent with 'day trader'

activities." (*Id.*) Such efforts are obvious attempts to testify to legal conclusions that should be precluded. *See Orion Group*, 2023 WL 9284098, at *1.

Mr. Evans proposes to testify that "[t]here is no clear causal data connection between Defendants' tweets and any price or volume increases." (Ex. 4 at -4399.) Such testimony goes to the success of the scheme and confuses the materiality standard and issues for the reasons discussed. (*See* US MILs sections II.8, II.9.) Thus, it should be precluded.

Mr. Evans proposes to testify that "[m]any of Defendant's public posts about the stocks at issue are, in fact, accurate or not capable of being proven to be accurate or inaccurate at the time they were made because they are mattes of opinion or predictions." (Ex. 4 at -4399.) Such testimony attempts to assert legal conclusions and should be precluded. *Orion Group*, 2023 WL 9284098, at *1.

Mr. Evans proposes to testify that "[a]t the time Defendants were tweeting about various stocks, many others in the market were also tweeting about those same stocks." (Ex. 4 at -4399.) The actions of others are irrelevant to this case for the reasons described. (US MILs section II.13.)

### Conclusion

The Court should preclude the proffered testimony and witnesses for the reasons discussed.


Dated: February 10, 2024                    Respectfully submitted,


                                            GLENN S. LEON
                                            Chief, Fraud Section
                                            Criminal Division, Department of Justice

                        By:     */s/ John J. Liolos*
                                            Scott Armstrong, Assistant Chief

John J. Liolos, Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Ave. NW
Washington, DC 20005
Tel.: (202) 768-2246


ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

By:     */s/ Thomas Carter*
        Thomas H. Carter
        Assistant United States Attorney
        State Bar No.: TX24048387
        1000 Louisiana Street, 25th Floor
        Houston, Texas 77002
        Tel.: (713) 567-9470

**<u>Certificate of Service</u>**

I hereby certify that on February 10, 2024, I will cause the foregoing motions to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

<u>*/s/ John J. Liolos*</u>
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section